Cadden vs. American Steel Barge Co.

---

CADDEN, Respondent, vs. AMERICAN STEEL BARGE COMPANY, Appellant.

*October 3 — October 23, 1894.*

*Master and servant: Injury from improperly placed scaffold: Fellow-servants: Evidence of custom: Contributory negligence.*

1. Plaintiff was injured while working for defendant as a riveter on a "whaleback" vessel, by reason of the improper and dangerous manner in which a scaffold had been suspended and adjusted for him to work upon. It was the custom and understanding that all scaffolds should be supplied for the riveters by the defendant, and

| | |
|---|---|
| 88 | 409 |
| 90 | 223 |
| 88 | 409 |
| 93 | 38 |
| 93 | 433 |
| 88 | 409 |
| 94 | 80 |
| 95 | 311 |
| 95 | 579 |
| 88 | 409 |
| 97 | 540 |
| 97 | 542 |
| 88 | 409 |
| 100 | 143 |
| 101 | 580 |
| 88 | 409 |
| 108 | 538 |
| 88 | 409 |
| 53 LRA | 657 |
| 54 LRA | 40n |
| 54 LRA | 44n |
| 54 LRA | 50n |
| 54 LRA | 70n |
| 54 LRA | 144n |

Cadden vs. American Steel Barge Co.

placed in position and adjusted by men employed by defendant for that special purpose and doing the work under its supervision, and that the riveters should give them no assistance or directions except to indicate where the scaffolds should be placed. *Held*, that the scaffold builders were not fellow-servants with plaintiff, but were charged with the duty which defendant owed him of providing a safe place for him to work, and hence their negligence in that respect is the negligence of the defendant.

2. The testimony of a witness as to the custom in respect to the relation between the scaffold builders and the riveters was properly excluded, where it appeared that he knew only what defendant's superintendent had told him.

3. The evidence — showing among other things that plaintiff was not present while the scaffold was being placed; that he was told by the scaffold builders that it was all right; that before getting down upon it he looked over the side of the vessel to see if it was all right, and it appeared to be so; and that two other persons, who viewed it from different directions, testified that it tipped the wrong way — is *held* to sustain a finding by the jury that plaintiff was not guilty of contributory negligence.

APPEAL from the Superior Court of *Douglas* County.

This action was brought by the plaintiff to recover the damages sustained by him while in the employ of the defendant, alleged to have been caused by its negligence. The defendant owned and operated the American Steel Barge Works at Superior, for building the vessels known as "Whalebacks;" and at the time of the injury of which the plaintiff complained, June 28, 1892, he was in defendant's employ as a riveter in and about its works. In his said employment it was the plaintiff's duty to go upon an elevated scaffold or platform on and along the side of a certain whaleback to work as a riveter thereon; and it is alleged that it was the defendant's duty to procure and furnish, for the use of the plaintiff, a good, safe, and secure scaffold upon which to stand while so at work; that the defendant, by two persons employed by it to erect and suspend said scaffold and put it in order, performed said work in a negligent, unskilful, and unsafe manner, of which

the defendant had notice, but its unsafe and dangerous condition was unknown to the plaintiff, and the defendant negligently omitted to warn the plaintiff thereof; that while the plaintiff was on the said scaffold in his said employment, by reason of its unsafe and dangerous condition it tipped up to one side, without fault on his part, whereby the plaintiff was thrown from the same down to the dock, a distance of twenty feet, and severely injured, to his damage, etc. The defendant denied the alleged negligence, and that it provided or furnished any unsafe, defective, or insufficient scaffolding, or that the plaintiff was injured thereby, and alleged that he was injured by and through his own fault and negligence.

Upon a trial before the court and a jury, a special verdict was found: (1) That the plaintiff in June, 1892, while in the employ of the defendant, fell from a suspended scaffold and received injuries. (2) That there was a crew of men employed by defendant whose exclusive duty it was to construct or place scaffolding where and when called upon by the workmen employed in building barges. (3) That it was the custom and understanding that the scaffold builders should receive no suggestions, directions, or assistance as to and in constructing or placing in position the scaffolds, but should themselves, without interference or assistance from the workers calling for the scaffolds, construct and place the same. (4) That in the present case the plaintiff did not erect or assist as to placing or adjusting the scaffold from which he fell. (5) That the persons who placed the scaffold in position did not exercise ordinary care in so doing. (6) That the scaffold, as left by those who placed it, was not in a position reasonably safe for the purposes for which it was to be used. (7) That the plaintiff did not know, and in the exercise of ordinary care would not have known, of the unsafe character of the scaffold before his fall and in season to avoid the danger. (8) After the plaintiff got on

the scaffold, he exercised ordinary care for his own safety.
(9) Scaffolds and appliances of the kind of the one in question were not in general use in the defendant's yards for
a length of time prior to the accident.  (10) They were not
used for a length of time for the convenience of the riveters.   Plaintiff's compensation for the injury was fixed
at $3,250.

The court made findings of facts on certain other questions from the evidence, by consent of the parties, in substance that Mongela and Johnson, employees of defendant
and members of scaffold building crews, were the only
persons who aided or directed in building or erecting and
suspending the scaffold in question; that the want of ordinary care on their part in building, erecting, and suspending
the scaffold was the proximate cause of plaintiff's injuries;
and that the defendant retained supervision over the building and erecting and suspending the scaffold in question,
and over the men who erected the same.

Judgment was given in favor of the plaintiff and against
the defendant for said $3,250 and costs, from which the
latter appealed.   Such other facts as are material are stated
in the opinion.

For the appellant there was a brief by *Kennedy & Burnett,* and oral argument by *E. C. Kennedy.*   They contended,
*inter alia,* that there is no evidence that the defendant retained any supervision whatever over the erection or placing in position of this scaffold.   No person other than the
one for whose use the scaffold was erected had or exercised
any authority as to the erection of the scaffold, or placing
the same in position.   The negligence of the scaffold builders in such a case is that of a fellow-servant, for which the
master is not liable.  *Peschel v. C., M. & St. P. R. Co.* 62
Wis. 338; *Armour v. Hahn,* 111 U. S. 313; *Johnson v. Ashland W. Co.* 77 Wis. 51; *Webber v. Piper,* 109 N. Y. 496;
*Dwyer v. Am. Exp. Co.* 32 Wis. 307; *Ling v. St. P., M. &*

*M. R. Co.* 50 Minn. 160; *Kelley v. Norcross*, 121 Mass. 508;
*Porter v. Silver C. & M. C. Co.* 84 Wis. 418; *Killea v. Faxon*,
125 Mass. 485; Buswell, Pers. Inj. § 217, and cases cited;
*Butler v. Townsend*, 126 N. Y. 105; *Burns v. Sennett*, 99
Cal. 363. The mere fact that the scaffold builders were
negligent in allowing the scaffold to tip outward when sus-
pended, is not sufficient to charge the defendant with neg-
ligence in the employment of the scaffold builders. *Cooper
v. M. & P. du C. R. Co.* 23 Wis. 668; *Baulec v. N. Y. &
H. R. Co.* 59 N. Y. 356; Bailey, Master's Liability, 55 *et seq.*
The danger attending the tipping of the scaffold outward
while the inner edge rests upon an oval surface arises from
the ordinary operation of familiar laws of gravitation; and
the plaintiff in this case, in view of the experience he had
had, must be presumed to be acquainted with such laws.
If he failed to observe the operation of these laws, the risk
was his own and not that of defendant. *Walsh v. St. P. &
D. R. Co.* 27 Minn. 367; *Keene v. Detroit C. & B. R. Mills*,
66 Mich. 277; *Melzer v. Peninsular Car Co.* 76 id. 94; *Sweet.
v. Ohio C. Co.* 78 Wis. 127; *Hobbs v. Stauer*, 62 id. 108;
*Naylor v. C. & N. W. R. Co.* 53 id. 661; *Goltz v. M., L. S.
& W. R. Co.* 76 id. 136; *Peffer v. Cutler*, 83 id. 281; *Nixon
v. Selby S. & L. Co.* 102 Cal. 458.

For the respondent there was a brief by *Mills & Dahl*,
and oral argument by *E. T. Mills.* They argued, among
other things, that where it has become the custom and
practice of defendant to erect scaffolds for its riveters, and
a contract is made with that custom in view, and defendant
undertakes to erect a scaffold by a separate crew over which
it retains supervision, and whose exclusive duty it is to
suspend scaffolds, a riveter is not a fellow-servant with the
scaffold builders. *Sims v. Am. S. B. Co.* 57 N. W. Rep. 322;
*Conner v. Pioneer F. P. Const. Co.* 29 Fed. Rep. 629; *Brub-
bits v. C. & N. W. R. Co.* 38 Wis. 289; *Johnson v. First Nat.
Bank*, 79 id. 414; *Van den Heuvel v. Nat. F. Co.* 84 id. 636;

*Bessex v. C. & N. W. R. Co.* 45 id. 477; *Hulehan v. G. B., W. & St. P. R. Co.* 68 id. 520; *Phillips v. C., M. & St. P. R. Co.* 64 id. 475; *Heine v. C. & N. W. R. Co.* 58 id. 531; *McClarney v. C., M. & St. P. R. Co.* 80 id. 278; *Dwyer v. Am. Exp. Co.* 82 id. 307; *Shultz v. C., M. & St. P. R. Co.* 40 id. 589; *Smith v. C., M. & St. P. R. Co.* 42 id. 520; 1 Shearm. & Redf. Neg. § 205; *Behm v. Armour,* 58 Wis. 1; *Benzing v. Steinway,* 101 N. Y. 547; *Smith v. Peninsular Car Works,* 60 Mich. 501; *Arkerson v. Dennison,* 117 Mass. 408; *Sherman v. Menominee R. L. Co.* 72 Wis. 122; *Laning v. N. Y C. R. Co.* 49 N. Y. 521; 7 Am. & Eng. Ency. of Law, 830; *Fuller v. Jewett,* 80 N. Y. 46; *Kirkpatrick v. N. Y. C. & H. R. R. Co.* 79 id. 240; *Green v. Banta,* 48. N. Y. Super. Ct. 156; *Kain v. Smith,* 89 N. Y. 375; *Devlin v. Smith,* id. 470; *Manning v. Hogan,* 78 id. 615; *Mulchey v. Methodist R. Soc.* 125 Mass. 487; *Pullman P. C. Co. v. Laack,* 143 Ill. 242; *Northern Pac. R. Co. v. Charless,* 51 Fed. Rep. 562; *Denning v. Gould,* 157 Mass. 563; *McLean v. Standard O. Co.* 21 N. Y. Supp. 874; *Ernst v. Brown H. & C. Co.* 24 id. 359; *Cougle v. McKee,* 151 Pa. St. 602; *Foster v. Mo. Pac. R. Co.* 115 Mo. 165; *Haworth v. Seevers Mfg. Co.* 51 N. W. Rep. 68; *Kelly v. Erie T. & T. Co.* 34 Minn. 321; *Heckman v. Mackey,* 35 Fed. Rep. 353. Plaintiff had a right to assume that the scaffold was safe, especially after being told so, and he did not know its unsafeness. He had a right to assume that it was fastened with a proper lateral support in such a manner that it would not give way. From where he stood he could not tell whether it rested against the oval or perpendicular surface of the boat. The assumption of the risk was a question for the jury. *Bessex v. C. & N. W. R. Co.* 45 Wis. 477; *Cole v. C. & N. W. R. Co.* 67 id. 272; *Clapp v. M. & St. L. R. Co.* 36 Minn. 6; *Piette v. Bavarian B. Co.* 91 Mich. 605; 14 Am. & Eng. Ency. of Law, 854; *Shultz v. C., M. & St. P. R. Co.* 40 Wis. 589; *Ditberner v. C., M. & St. P. R. Co.* 47

id. 138; *Northern Pac. R. Co. v. Herbert*, 116 U. S. 642;
*Kellogg v. C. & N. W. R. Co.* 26 Wis. 223; *Grannis v. C.,
St. P. & K. C. R. Co.* 81 Iowa, 444; *Johnson v. First Nat.
Bank*, 79 Wis. 414; *Elledge v. N. C. & O. R. Co.* 100 Cal.
282; *Nixon v. Selby S. & L. Co.* 102 id. 458.

PINNEY, J.   1. There does not appear to have been much
dispute in respect to the facts, and the verdict of the jury
is, we think, sustained by sufficient evidence.   It shows
that the custom and practice was that all scaffolds were
supplied for the riveters by the defendant company, and
there were men there under its control for the special pur-
pose of building and placing them in the positions directed
by the riveters.   With this the riveters had nothing what-
ever to do, beyond telling them where they wanted the
scaffolds placed.   The scaffold was constructed of two planks
nailed upon crosspieces at each end, with ropes attached to
the crosspieces on the inside and outside to suspend it, and
these were fastened to stanchions above the deck.   The
inner ropes lay flat against the side of the boat, which
curved inward.   It was necessary that the outer side of the
scaffold should be the highest, so that it would tip toward
the side of the boat and rest securely against it.   It ap-
peared that the accident was caused by the improper and
dangerous manner in which the scaffold was suspended and
adjusted, so that it tipped outward and to the dock; and in
consequence, when the plaintiff got upon it, the inner side
of the scaffold slipped up the side of the boat, and rested
flatwise on its side, instead of its edge resting securely
against it, whereby the plaintiff was thrown upon the dock
below.

2. The ruling of the court excluding the testimony of the
witness Rogers as to the custom of the defendant relative
to the control of the scaffold builders was properly made.
It did not appear that he was sufficiently qualified to tes-

tify on the subject. He said, in substance, that he learned the custom from the defendant's superintendent when he (witness) took charge as foreman of the carpenters, about six months before the accident; that they were told the scaffold builders were to do whatever they told them, and whenever they told them. He did not profess to have any knowledge as to the relation between the scaffold builders and riveters, or, indeed, of any custom at all. He knew simply what the superintendent had told him.

3. It is contended that the plaintiff was guilty of contributory negligence in going upon the scaffold in the manner in which it had been adjusted and suspended, but the verdict of the jury, upon sufficient and competent evidence, has found on this point in favor of the plaintiff. It appears that, after the plaintiff had riveted up the side of the whaleback three or four feet, he directed the scaffold builders to raise the scaffold up so the hatch could be finished, and they began doing so, when he left to take some chisels to be sharpened. He returned after an absence of fifteen minutes, and the scaffold builders were about leaving just as he came on deck, within about 100 or 150 feet from where the scaffold was hung. He asked one of them (Johnson), "Is that scaffold all right now?" and he said, "Yes." He looked no further until he got down to where the scaffold was, and then down to the scaffold, and then he looked over to see if it was in its right place, and it appeared to be. He then had to slide down over the side of the whaleback six or seven feet to get upon it. He testified that he always took a look at a swinging scaffold before going upon it, to see if it was all right, and took a look at this one. "It appeared to me to be all right, over where I was standing." Two witnesses, viewing it from different directions, testified that the scaffold tipped out over the dock, when it should have tipped toward the side of the boat in order to be secure and safe. There was

sufficient evidence to sustain the verdict of the jury on this question, as well as others; and the trial judge was satisfied with the verdict and denied a motion for a new trial made on the ground that the verdict was contrary to evidence. We cannot interfere with the finding.

4. The verdict of the jury, as well as the evidence, is clearly to the effect that, as between the plaintiff and defendant, it was its duty to furnish him with proper scaffolds, securely and safely placed, where he could safely work for it in riveting upon the sides of the whaleback in question, and they were to be suspended along the side of the boat wherever and whenever he indicated, to enable him safely to prosecute his work. This "was the custom and understanding." He had no other control over or relation to them, and they were in all other respects under the control of the superintendent of the defendant, under whom it was their exclusive duty to build and so place such scaffolds. The contention of the defendant's counsel that the plaintiff and the scaffold builders were fellow-servants of the defendant, engaged in a common service or employment, and that the defendant was therefore not liable to the plaintiff for damages caused to him by the negligence of the scaffold builders in not safely and securely placing and suspending the scaffold in question, cannot, we think, be sustained. It is entirely plain that, as between the defendant and the plaintiff, it was its duty to furnish him a proper and safe place to work as a riveter on and along the side of the whaleback. The scaffold builders were not engaged in the common service or employment of the plaintiff, but in an entirely different service, namely, in discharging for the defendant, under its direction, the duty it owed as master to the plaintiff as its servant. For any damages caused by the neglect of this duty, the master is clearly liable; and, while he may delegate the performance of the duty to other employees, he cannot thereby escape from liability for its

nonperformance. If they are negligent or fail to discharge his duty properly, their neglect is to be imputed to him, and the liability on his part still remains. The scaffold builders were not, in the true sense of the rule relied on, fellow-servants with the plaintiff, who was using the scaffold, but were charged with the duty of the master to the servant, and were therefore engaged in a distinct and independent department of service. This view, we think, is decisive of the case, and shows that the injury the plaintiff sustained is the result of what in law must be regarded as the negligence of the defendant.

The distinction between this case and most of those cited by the appellant's counsel is noticed in *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 343–347, and consists in the fact that here the defendant was not merely to furnish materials for the scaffolds and men to build them, leaving the application of the materials or adjustment and placing of the scaffolds to the plaintiff and other employees of the defendant, as in that case and in *Armour v. Hahn*, 111 U. S. 313, and other cases cited, but here the defendant was bound to properly place or suspend the scaffold in position for the plaintiff to work thereon; for it is found that "it was the custom and understanding that the scaffold builders should receive no suggestions, directions, or assistance as to or in constructing or placing in position the scaffolds, but should themselves, without interference or assistance from the workers calling for the scaffolds, construct and place the same;" and it is further found that the defendant retained supervision over the building, erecting, and suspending the scaffolds in question, and the men who erected the same. The principle in question is a familiar one, and sustained by numerous decisions. We cannot doubt its applicability to the present case. *Bessex v. C. & N. W. R. Co.* 45 Wis. 477; *Hulehan v. G. B., W. & St. P. R. Co.* 58 Wis. 319; *McClarney v. C., M. & St. P. R. Co.* 80 Wis. 280. In *Dwyer v. Am. Exp. Co.* 82 Wis. 307, it was held that the question whether dif-

Cadden vs. American Steel Barge Co.

ferent employees of the same master are to be regarded as fellow-servants in a common employment depends upon the nature of the act in the performance of which the injury was inflicted, without regard to the rank of the negligent servant, and that the master is not liable unless the negligent act pertained to a matter in respect to which he owed a direct duty to the servant injured. In that case the doctrine is approved that, if the act is one it is the duty of the master to perform, then the offending employee is not a servant, but an agent, and the real effect of the rule which is acted on in *Brabbits v. C. & N. W. R. Co.* 38 Wis. 289, and *Schultz v. C., M. & St. P. R. Co.* 48 Wis. 375, is to make any servant of the company who is charged with the performance of any duty which the master owes its servants a vice-principal in respect thereto.

If it could be said that the duty of the master ended with furnishing proper scaffolds, ready to be adjusted, and that they were to be suspended and adjusted by the plaintiff, or by him in company with others, his co-employees, we think the defendant would not be liable for the plaintiff's injury; but, under the finding, it is clear that the plaintiff was not to have, and did not have, anything to do with placing the scaffold, but that this duty was devolved on the defendant, and whether by custom or by agreement is not material. The fact that the plaintiff was to indicate where it was to be placed, or had a right to object that it was not properly suspended or adjusted, does not affect the result. He certainly had a right to call on the defendant to do its duty, and to object that it had not been properly performed. Under the facts found, in view of the duty of the defendant to suspend and adjust the scaffold properly, it became, in our opinion, a *place*, as distinguished from a mere *appliance*, which the defendant was bound to furnish the plaintiff, though changing in location with the exigencies of the work; and it was its duty to see that it was in a reasonably safe and proper condition to enable

Cadden vs. American Steel Barge Co.

the plaintiff to work thereon. The plaintiff did not take the risk of the carelessness of those who were selected by the defendant and undertook to do its duty, even though they were the servants of the same master. This view of the case is in accordance with former decisions of this court and a great preponderance of authority. The subject has recently received elaborate and careful consideration in the supreme court of the United States, particularly in *Northern P. R. Co. v. Herbert*, 116 U. S. 642; *Hough v. Railway Co.* 100 U. S. 213; *Baltimore & O. R. Co. v. Baugh*, 149 U. S. 387, and *Union P. R. Co. v. Daniels*, 152 U. S. 684, 688. In *Sims v. Am. Steel Barge Co.* (Minn.) 57 N. W. Rep. 322, where the facts were quite the same as in the present case, a similar conclusion was reached; and so in *Conner v. Pioneer F. P. Const. Co.* 29 Fed. Rep. 629. That the plaintiff and the scaffold men or crew were not fellow-servants in the employ of the defendant and engaged in a common service or employment, within the meaning of the rule invoked by counsel of the defendant, is maintained in very many quite recent cases in the courts of other states. *Ford v. Fitchburg R. Co.* 110 Mass. 240, 260; *Kelley v. Norcross*, 121 Mass. 508; *Lawless v. Conn. R. R. Co.* 136 Mass. 1; *Sadowski v. Mich. Car Co.* 84 Mich. 105; *Roux v. Blodgett & D. L. Co.* 94 Mich. 615; *Louisville, N. A. & C. R. Co. v. Graham*, 124 Ind. 89; *Wilson v. Willimantic Linen Co.* 50 Conn. 433; *Lewis v. Seifert*, 116 Pa. St. 628; *Fuller v. Jewett*, 80 N. Y. 46; *Crispin v. Babbitt*, 81 N. Y. 516; *Benzing v. Steinway*, 101 N. Y. 547; *Jaques v. Great Falls Mfg. Co.* (N. H.) 22 Atl. Rep. 552; *Shanny v. Androscoggin Mills*, 66 Me. 426. The case of *Burns v. Sennett*, 99 Cal. 363, is one where, by the contract, the servant and certain of his fellows were to adjust the appliances by which the work was to be done, and is plainly inapplicable.

We find no reversible error in the record.

*By the Court.*— The judgment of the superior court of Douglas county is affirmed.