HOLLOWAY, Respondent, vs. H. W. JOHNS-MANVILLE COM-
PANY, Appellant.

*April 24—May 8, 1908.*

*Master and servant: Assumption of risk: Latent danger: Assurances
of safety by superior officer: Contributory negligence: Question
for jury.*

1. An employee does not, as matter of law, assume the risk of a
   latent danger incident to his employment, not actually known
   to him and discoverable only by careful inspection, where he
   enters upon the work relying on assurances of safety by the
   master or superintendent having or professing to have superior
   knowledge of the situation.

2. Plaintiff's employment by defendant included cleaning boilers
   in defendant's factory under direction of the head engineer.
   The task required entering the boiler and washing it with cold
   water.  Preliminary to washing, it was necessary, several hours
   in advance, to blow off the steam or hot water that the boiler
   might cool.  The engineer ordered plaintiff to clean a certain
   boiler, assuring him that the steam had been blown off sea-
   sonably, that he had tested the boiler, and that it was safe.
   Whether the boiler was sufficiently cool to be safe could not
   be ascertained by external inspection.  Plaintiff, relying on
   the engineer's assurances, entered the boiler without testing it
   and was scalded by the steam generated by cold water coming
   in contact with the back end of the boiler, which was still
   heated.  *Held*, that plaintiff was not barred by the fellow-serv-
   ant rule.

3. Whether an employee was contributorily negligent in going to
   work in a place of possible danger, relying upon the assurances
   of safety by his superior, without making his own inspection,
   was for the jury.

APPEAL from a judgment of the circuit court for Milwau-
kee county: ORREN T. WILLIAMS, Circuit Judge.  *Affirmed.*

Action to recover damages for personal injuries.  The de-
fendant is a corporation owning and operating a large man-
ufacturing plant at Wauwatosa, which is operated by steam
furnished by a number of large tubular boilers.  For some
months prior to October 12, 1903, the plaintiff, a common

laborer fifty-eight years of age, had been employed by the de-
fendant as a general utility man, helping at blacksmithing,
steamfitting, and repairing of various kinds as he was di-
rected. It was necessary to clean the boilers frequently, and
they were cleaned one at a time. The method was to blow
off the steam and hot water twelve hours or more before the
boiler was to be cleaned in order that it might be cool enough
to enter, remove the manhole, and then send a man inside
with a light and hose, his duty being to wash out the inside
with a stream of cold water through the hose. The plaintiff
had frequently cleaned boilers when directed, and knew that
if they were not cool enough inside there would be danger.
He knew also that they could be tested before going in by
turning the hose into them and seeing if steam was formed.

Charles Quinlay was head engineer at the time of the acci-
dent and the plaintiff had been placed under his orders.
The plaintiff claims that in the evening of October 12th the
engineer, Quinlay, told him he was going to give him a
steady job; that he was to clean one boiler every day; that
he was to start with boiler No. 6 on the following morning;
that he (plaintiff) then said to Quinlay: "All right, I will
start in the morning. You see that the boiler is blowed off
tonight at 8 o'clock"—to which Quinlay replied that he
would see to it. The plaintiff further testifies that he came
back in the morning, found the manhole of the boiler off,
but could not find the gaskets which were necessary to pre-
pare the manhole plates for the work; that it took some time
to get gaskets, and when he was about ready he met Engi-
neer Quinlay, who asked him if he hadn't got that boiler yet,
and he replied that he had been getting the manhole plates
ready, and then asked Quinlay if the boiler was fixed for him
to go in, to which Quinlay replied that the boiler was fixed
for him to go in, that he had tested it and found it was all
right, that he wanted him to take a hammer, the extension
lights, go in and wash it out clean, and see that the stay bolts

were firm and stable and that there were no leaks; that he then got on the boiler with his hose and got into the boiler through the manhole and ordered the water turned on through the hose; that the water was turned on, and when it struck the back end of the boiler it turned to steam because that part of the boiler was still heated; that he got his head out of the boiler through the manhole, but could not get the rest of his body out and was badly scalded by the steam. Plaintiff further testified that he would have tested the boiler himself before going in if the engineer had not told him that he had already tested it.

The engineer, Quinlay, denied that he promised that he would see that the boiler was blown off before 8 o'clock in the evening, and denied that he told the plaintiff that he had tested it or that it was fit for him to go in. It was not denied that the plaintiff was seriously scalded and permanently injured.

A verdict for the plaintiff assessing his damages at $5,308.33 was rendered, a motion for new trial was denied and judgment rendered on the verdict, from which defendant appeals.

For the appellant there was a brief by *Roemer & Aarons,* attorneys, and *John M. Niven,* of counsel, and oral argument by *Mr. Niven.*

*William T. Green,* attorney, and *W. B. Rubin,* of counsel, for the respondent.

WINSLOW, C. J. In addition to its main contention that a verdict for the defendant should have been directed, the appellant in its brief assigns a number of detail errors; but as counsel upon the argument expressly waived consideration of these minor errors and insisted only upon the general claim of insufficiency of the evidence to sustain any verdict for the plaintiff, we are relieved from the consideration of such minor contentions.

The argument is that the evidence shows no negligence on the part of the appellant; that it provided a safe place to work, safe and suitable tools, and competent fellow-servants; and that the only negligence on the part of any one except the plaintiff himself was the negligence of the engineer, Quinlay, in assuring the plaintiff that the boiler had been tested and sending him into it while it was still hot. It is claimed that this was simply the negligence of a fellow-servant in carrying out one of the details of the common employment, the risk of which the plaintiff assumed.

This contention is met by the respondent first by the claim that the cooling of the boiler (being no part of the plaintiff's duty) was in effect the preparation of a safe place for the plaintiff to work, like the preparation of a scaffold, and hence was a part of the master's duty which could not be delegated. *Cadden v. Am. S. B. Co.* 88 Wis. 409, 60 N. W. 800. We do not find it necessary to decide whether the cooling of the boiler constituted the preparation of a safe place to work or not. Conceding, but not deciding, that it did not, but that it was a mere detail of the general employment, which if negligently done would become merely the negligent act of a co-employee, there is an additional fact shown by the testimony of the plaintiff which we think is decisive in this case.

As before stated, it was not a part of the plaintiff's duty to blow off the boiler and prepare it for cleaning. This was the duty of the night force. The plaintiff came to the spot in the morning as he was directed to do, prepared to clean a boiler which had already been blown off. Mere outside inspection would not necessarily disclose the fact that it was not thoroughly cooled, although a test by throwing water into it would disclose the fact. The immediate superior who had promised to see that the boiler was blown off at the proper time met him and ordered him to get to work in the boiler at once. In response to the plaintiff's inquiry whether

it was ready to go into, *i. e.* cool enough, his superior assured him that it was and that he had tested it. The plaintiff knew nothing to the contrary nor would visual inspection from the outside tell him anything to the contrary. Relying on this assurance he entered the boiler and proceeded with his work in the usual way and was grievously injured because a part of the boiler was still hot.

Now it may be conceded for the sake of argument that had the only claim of negligence been that the boiler was not blown off at the proper time, this would have been simply negligence on the part of a co-employee of which the plaintiff assumed the risk, but the assurance of safety by the plaintiff's superior introduces a new element into the question. It is entirely true that when an employee voluntarily enters upon a task attended with dangers which are obvious and apparent he assumes the risk of such dangers notwithstanding an assurance by the master or his agent that there is no danger. In such case he has no right to rely on the assurance. He knows the danger as fully as his superior. *Showalter v. Fairbanks, M. & Co.* 88 Wis. 376, 60 N. W. 257. But, on the other hand, if the employee has no actual knowledge of the danger, and it is not obvious to the sense but only to be ascertained by careful examination or test, and the master or superintendent having superior knowledge of the situation, or assuming to have such knowledge, assures the employee of safety, and the employee, relying on such assurance, goes to work, he will not be held as matter of law to have assumed the risk. 4 Thomp. Com. on Neg. § 4664; *Denning v. Gould,* 157 Mass. 563, 32 N. E. 862; *Burnside v. Novelty Mfg. Co.* 121 Mich. 115, 79 N. W. 1108; *Goggin v. D. M. Osborne & Co.* 115 Cal. 437, 47 Pac. 248; *Stomne v. Hanford P. Co.* 108 Iowa, 137, 78 N. W. 841; 1 Bailey, Pers. Inj. § 898 *et seq.; Hoffman v. Dickinson,* 31 W. Va. 142, 6 S. E. 53.

In this case the engineer whose orders the plaintiff was

required to obey was in a position to have superior knowledge of the condition of the boiler and claimed to have such knowledge. The danger was not obvious by inspection. The engineer ordered the plaintiff into the boiler, assuring him that he had tested it and that it was safe. Under these circumstances, it appearing that the plaintiff had no actual knowledge of its condition, the doctrine which prevents a recovery for injuries resulting from the negligence of a co-employee has no application, and the question whether the plaintiff himself was guilty of contributory negligence in going into the boiler without making his own test is properly one for the jury.

*By the Court.*—Judgment affirmed.

BASHFORD, J., took no part.