NOVITSKI, Respondent, vs. WAITE GRASS CARPET COMPANY, Appellant.

*March 15—April 8, 1913.*

*Master and servant: Injury from defective machinery: Physical impossibility: Questions for jury: Assumption of risk: Contributory negligence: Special verdict: Form: Appeal: Review: Harmless errors.*

1. A verdict which the trial court has refused to set aside should not be disturbed on appeal, in disregard of the common sense of the jury and the learning and experience of the trial judge, upon mere theories of impossibility based upon literal interpretation of oral discourse, estimates of time, distance, and quantity, and impeccability of defendant's witnesses.

2. Plaintiff, an employee in defendant's matting factory, was injured while baling dried swamp grass with a hay-press. He testified that a lever used in operating the press had been broken and twice repaired by defendant's foreman; that at the time of the last repair the foreman assured him that it was all right and directed him to continue work; and that three days later, while he was pulling this lever, it gave way, causing him to lose his balance and fall against the machine in such a way that his arm was caught and injured. Upon conflicting evidence which defendant claimed to show that it was physically impossible that the accident could have happened in

that way, it is *held* that it was a question for the jury whether plaintiff sustained his injuries substantially in the manner described by him.

3. In such case the repair by the .foreman and the direction to continue work with the machine as repaired were equivalent to an assurance of safety and went to excuse plaintiff's return to and continuance of work notwithstanding his knowledge of the former defect.

4. The questions of contributory negligence and assumption of risk in such case were so closely related that there was no prejudicial error in refusing to submit a separate question as to the latter in the special verdict, where the court instructed the jury concerning assumption of risk in that part of the charge relating to defendant's negligence, but was not requested to and did not instruct upon that subject in the part relating to contributory negligence.

5. The trial court may properly. refuse to submit questions proposed for the special verdict which relate merely to details of evidence and the answers to which would determine no issue.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

For the appellant there were briefs by *Weed & Hollister,* and oral argument by *H. I. Weed.*

For the respondent there was a brief by *Martin, Martin & Martin,* and oral argument by *J. F. Martin* and *G. F. Clifford.*

TIMLIN, J. The respondent had judgment in the court below against the appellant on a special verdict finding (1) that the lever of the hay-press was broken, out of place, or defective at the time plaintiff was injured; (2) the defendant was guilty of negligence in suffering and requiring plaintiff to operate said press in the condition it was at the time of accident; (3) this defective condition was the proximate cause of plaintiff's injury; (4) the defendant in the exercise of ordinary care and prudence ought to have anticipated an injury to plaintiff from such defective condition; (5) the plaintiff was not guilty of any want of ordinary care and prudence which contributed to the injury; (6) the plaintiff's

damages are $7,000. These damages were reduced by the circuit court to $6,000.

Errors assigned by the appellant may be reduced to two, viz.: (1) the evidence is insufficient; (2) other questions requested should have been submitted in the special verdict. There was evidence from which the jury might have found that in a factory engaged in making grass matting from dried swamp grass or hay the plaintiff was engaged in collecting and baling the refuse or waste upon a machine practically identical with a hay-press and in bundles resembling the ordinary bales of hay. This press was operated from the power in the building, and the plaintiff's duty was to pitch in the hay, press it, wire the bales, and in doing so pull back a lever used to drop a block which separated the bales. The feed board on which the hay was thrown had iron teeth in it and worked automatically, carrying and pushing down the loose hay into the hold or receptacle of the machine in which it was pressed into a bale. The lever mentioned was out of repair at the lower end near its fulcrum or fastening where the casting was broken. This broken casting had been drilled and a short bolt or set-screw set in to take the place of a former projecting piece of the casting. The plaintiff brought the attention of the defendant's foreman to this defect, the latter caused a bolt or set-screw to be inserted, plaintiff returned to work, this bolt or set-screw came out during the work, plaintiff again notified the foreman, who took the old bolt or set-screw out and inserted a new or longer one, with which the plaintiff then worked three days and until the time he was injured. At the time of last repair the foreman assured plaintiff the repair was all right and ordered him to go ahead. While in the act of pulling the lever forward with his right hand for the purpose of dropping the block, this bolt or set-screw again came out unexpectedly, by reason of which, together with his exertion in throwing the lever, the plaintiff apparently lost his balance, fell against the machine,

and had his right arm caught below the elbow by the teeth in the feed board, tearing the flesh off the bone down to the wrist and necessitating the amputation of the arm above the elbow joint.

One contention of appellant's counsel is that, the top of the hay-press being fifty-seven and one-half inches from the floor, it was impossible that this accident could have happened in the way stated by plaintiff. The plaintiff, however, testified that he was at the time standing upon an accumulation of hay or refuse which elevated him two or three feet above the floor. This is met by the claim on the part of appellant's counsel that on his preliminary examination he testified that he stood on the floor, and that it was impossible that he should have gathered and pressed twenty-five bales of hay in the forenoon of that day, as he says he did, and also have covered the floor with hay outside the press to the height mentioned. It is also urged that four witnesses on the part of the defendant testified that the floor was practically clear of hay about the press immediately after the injury. We do not find evidence which supports any such argument. The plaintiff did not, we think, testify that the whole floor was covered with hay to the height mentioned at the time of his injury, nor did defendant's witnesses agree that there was no hay on the floor near the press at that time. Taken all together they merely differed from the plaintiff in their estimate of the quantity then on the floor near the press. By accepting literally the words "stood on the floor," and the estimate of twenty-five bales, and fixing a certain weight for each of the unweighed bales and accepting as mathematically exact the estimate of the time required to make one bale, and considering the number of minutes included in the forenoon's work and the number of machines and the estimated distance, it is figured out to be physically impossible that there should be such an amount of hay on the floor at the time in question. This seems to be carrying the theory of physical impossibility

beyond its legitimate bounds. Even without this hay the accident substantially as testified to by the plaintiff is by no means impossible. The question whether the plaintiff sustained his injuries substantially in the manner described by him was a proper subject for argument to the jury and to the circuit court on motion for a new trial. The practical common sense of the one and the learning and experience of the other are not to be disregarded upon mere theories of impossibility based upon literal interpretation of oral discourse, estimates of time, distance, and quantity, and impeccability of defendant's witnesses.

On the question of contributory negligence or assumption of risk, which in this case are so cognate that no sound reason can be given for their separation, the repair by the foreman and the directions to continue work with the machine as repaired were equivalent to an assurance of safety. *Holloway v. H. W. Johns-Manville Co.* 135 Wis. 629, 116 N. W. 635; *Jakopac v. Newport M. Co., ante,* p. 176, 139 N. W. 1060. It went to excuse the return to work and the continuance of work on the part of plaintiff, notwithstanding his knowledge of the former defect, because of the repair and the instruction to proceed with the implement as repaired. If the repair had been clearly and manifestly insufficient or if no repairs had been made, a different question might arise which we are not called upon to decide in this case.

Upon the second subdivision of the assignments of error the questions requested by defendant were the following:

"(1) Could plaintiff's arm come in contact with the feed board of the hay-press if he operated the lever in the usual way? (2) When plaintiff was hurt, was the lever in the place it usually occupied after a block had been dropped into the machine? (3) Did the plaintiff assume the risks?"

With reference to the first question above quoted, neither a negative nor an affirmative answer thereunto would have settled any issue made by the pleadings upon which this case

turns. We must assume that the appellant expected that the jury might answer this in the negative, but what if they did? No doubt operating the lever in the usual way would not bring the plaintiff's arm in contact with the feed board. The negative answer would settle nothing material and nothing that would change the result if added to the questions actually submitted. It is a mere detail of evidence, tentative, partial, and inconclusive. The same is true of the second proposed question. With reference to the third question, this was a case within the authorities where the circuit court in his discretion was authorized to cover the question of assumption of risk and contributory negligence by the finding actually made. The question of assumption of risk arising from the ordinary operation of this machine when in repair is not what is under investigation. That would be quite immaterial to the case as made by the plaintiff. The defendant's evidence tended to show that this lever fastening was not broken and repaired and broken again and repaired again or broken at all while the plaintiff worked on it. The plaintiff's evidence tended to show that it was so broken and repaired and that he was injured because of the defective lever resulting from the inadequacy of such repairs. Upon this he must recover or not at all. Therefore, so far as assumption of risk is relevant to the case made by the plaintiff, it is assumption of the risk of working with the lever so repaired. There is no affirmative evidence that plaintiff was conscious of any defect existing after the last repair except such as the repair itself would indicate, and as to that he had the assurance proceeding from the act of repair and the order to continue work. The evidence of assumption of risk by working at this machine after the last repair is therefore quite shadowy, and even if we were to assume that it was not covered by the question relating to contributory negligence the failure to submit the separate question is not shown to have been prejudicial. But in a case like this the question of as-

sumption of risk is sufficiently covered by the contributory negligence question, although the court should have in- structed, and probably would if requested have instructed, the jury that the question covered assumption of risk.    The court did not instruct concerning assumption of risk in that part of his charge relative to the fifth question, but did in that part relating to the second question.    We think there was. no prejudicial error shown in this respect within the rule of *Campshure v. Standard Mfg. Co.* 137 Wis. 155, 118 N. W. 633, and cases there cited.

The learned circuit judge expressly passed upon the dam- ages and reduced by the proper order the sum awarded by the jury to $6,000.    We think the case mainly turns upon questions of fact in this as in other respects, and we are of opinion that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.