WILLIAMS, Respondent, vs. NORTH WISCONSIN LUMBER
COMPANY and another, Appellants.

*February 2—February 21, 1905.*

*Negligence: Amendment of pleading: Instructions to jury: Defining
"ordinary care:" Master and servant: Who are fellow-servants:
Negligence in making repairs: Court and jury.*

1. Where the cause of action stated was plainly one for simple neg-
   ligence, it was not error to permit plaintiff, at the opening of
   the trial, to strike from the complaint words characterizing.
   defendants' act as "wilful, wanton, and reckless."
2. Ordinary care is that degree of care usually or ordinarily exer-
   cised by persons of ordinary care and prudence (or the great
   majority of people) engaged in the same or similar business
   under the same or similar circumstances; and a charge de-
   fining it as such care as persons of ordinary care and prudence
   ordinarily use "under all the facts and circumstances surround-
   ing them at the time," was erroneous.
3. The instructions and general charge in this case are criticised
   as stating, in substance, that notwithstanding none of the facts
   necessary to charge the defendant company with negligence
   had been proven, still if the jury found the company guilty of
   negligence which was the proximate cause of the injury they
   might find a verdict against the company—thus apparently
   giving the jury liberty to pronounce anything negligence which
   they might choose.
4. When the master has provided for the servant a safe place to
   work, safe tools and appliances, and competent and careful co-
   employees, and has given sufficient warning of hidden or latent
   dangers, he may commit to the employees the details of the
   work, including incidental repairs or readjustment of machin-
   ery which can easily be made by the employees themselves
   from proper materials furnished by the master; and such serv-
   ants, thus prosecuting the work or making such readjustment
   or incidental repairs, become fellow-servants, whatever their
   rank, so that the negligence of one by which others are injured
   is the negligence of a fellow-servant.
5. So *held* as to the negligence, if any, of the superintendent of a
   lumber, company operating an electric light plant, in directing
   the current to be turned on, to test the operation of a dynamo
   after making a change in the armature, without notifying an
   employee who was engaged in splicing a wire in the street, and
   who was killed by the test current.

6. Whether such act of the superintendent was negligence render-
ing him liable, and whether the deceased was guilty of con-
tributory negligence, are *held*, on the evidence, to have been
questions for the jury.

APPEALS from a judgment of the circuit court for Sawyer
county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This is an action by the plaintiff, as administratrix of the
estate of Ben Williams, deceased, for damages sustained by
her as widow of said Ben Williams on account of his death,
which is claimed to have been caused by the negligence of the
defendants on September 1, 1902. The evidence showed,
without substantial dispute, the following facts:

At the time of the accident, and for some time prior there-
to, the defendant lumber company owned and operated a saw-
mill at the village of Hayward, and also an electric light
plant, with which it lighted its factory and the streets and
residences of said village; and the defendant *Rogers* was the
superintendent of its lumber business as well as the electric
light business. For a number of years the deceased, Ben
Williams, operated a dynamo at the electric light plant at
night, and made repairs upon the plant and wires during the
forenoon, and took a rest in the afternoon. One Fox was en-
gineer of the engine at the planing mill, and assisted in mak-
ing repairs on the dynamo from time to time. Three days
before the death of Williams the armature of the dynamo
was burned out, and taken to Minneapolis by *Rogers* to be
repaired, and during his absence the street lights were not in
operation. *Rogers* returned with the armature on Saturday
night, but it was not put in position until Monday, which was
the day of the injury. On that day defendant *Rogers* sent a
boy to the residence of Williams to ask him to come to the
dynamo room and assist in repairs. The boy, however, re-
turned with the information that Williams was not at home,
having taken his daughter out into the country to a school
which she was teaching, and that he would not return till

after dinner.   Thereupon *Rogers* set Fox to work putting in the armature, and at about 1 o'clock Fox had completed the adjustment of the armature, and *Rogers* came to the dynamo room at this time and gave Fox assistance in completing the work, and then instructed him to turn on the steam and start the engine, to see if it worked satisfactorily.   Fox turned on the power, but for some reason it did not operate satisfactorily, and *Rogers* thereupon pressed the brushes (which are a part of the dynamo) with his hands, and again ordered the power turned on, which was done by Fox, and a good current was produced, and after running a few moments the power was shut off.

It further appears that Williams had driven into the country about half past 7 o'clock that morning with his daughter, and that he arrived home shortly before noon; that during his absence some men who were moving a building through the street sent word to Williams's residence requesting him to cut one of the electric light wires which was in the way of the moving building; that Adolph Williams, son of the deceased, who had worked for some months as assistant to his father, volunteered to cut the wire and did so; that when deceased arrived home his son informed him of the cutting of the wire, and deceased then proceeded to the place for the purpose of splicing the same, and without informing *Rogers* of his intention he climbed the pole, and was attempting to splice the ends of the wire at the very time when the test current was turned on by *Rogers,* and in some manner the deceased came in contact with both the negative and positive wires, thereby producing a short circuit and causing his death; that it was the practice of *Rogers* during all the time while deceased acted as electrician that the current should not be turned into the wires by any person other than the deceased, or, if done by any one else, that the deceased should first be notified; that deceased did not know that the armature had returned when he was attempting to splice the wires, and that neither

*Rogers* nor Fox knew that the wire had been cut or that the deceased had returned from his errand in the country.

Both defendants moved for direction of a verdict, which motions were overruled. The court charged the jury, at the request of the defendants, as follows:

"(1) You are instructed that in repairing the dynamo and testing it both *Rogers* and Fox were fellow-servants of Ben Williams, and that he, the said Williams, assumed the risk of any injury which might be caused by their negligence in making such repairs and test.

"(2) You are instructed that you cannot find the defendant *North Wisconsin Lumber Company* negligent in this action on account of any failure on its part to furnish reasonably safe tools, implements, and appliances with which Ben Williams was required to work.

. "(3) You are instructed that you cannot find defendant lumber company negligent because of any incompetency of either Fox or *Rogers*.

"(4) You are instructed that to make the defendant lumber company liable in this action the plaintiff must satisfy you by a fair preponderance of the evidence that the lumber company failed in one or more of the following duties: (1) That it failed to furnish him a reasonably safe place in which to do his work; (2) that it failed to provide him with reasonably safe and proper tools, implements, and apparatus; (3) that it failed to provide reasonably competent and careful co-employees to work with him. These are the three duties the master owes to his servant, and before the plaintiff can recover she must satisfy you that the defendant lumber company failed in some one or more of these three respects.

"(5) You are instructed that there is no evidence in this case tending to show that the defendant lumber company did not provide reasonably safe and suitable tools and apparatus and reasonably careful and competent employees.

"(6) You are instructed that in performing the act of directing Fox to turn on the current to test the armature *Rogers* was acting as a fellow-servant of deceased, and the defendant lumber company is not liable for such direction, even though you believe it was negligently given.

"(7) If you find deceased was guilty of any want of ordi-

nary care, however slight, which contributed directly to his death, the plaintiff cannot recover.

"(8) You are instructed that the duty to warn deceased that the current was about to be turned on did not exist unless you are satisfied from the evidence that the defendant lumber company or *Rogers* knew, or ought to have known, that the deceased was or might probably be engaged in repairing the wires.

"(9) You are instructed that you cannot find for the plaintiff and against either defendant unless you are satisfied to a reasonable certainty by a fair preponderance of the evidence that one or both of the defendants was guilty of some negligent act or omission which was the proximate cause of Ben Williams's death.

"(10) You are instructed that you cannot find that the negligent acts or omissions of the defendants, or either of them, were the proximate cause of deceased's death, unless you are satisfied that the injury to deceased was the natural and probable result of such act or omission, and unless you further find that an ordinarily prudent person in the light of the attending circumstances would have anticipated that injury might probably occur by reason of such act or omission.

"(11) You are instructed that you cannot find defendant lumber company liable to plaintiff simply because *Rogers* neglected to inform deceased that he (*Rogers*) was about to have the current turned on.

"(12) You are instructed that you cannot find defendant lumber company liable simply because *Rogers* directed the current to be turned on at the time he did.

"(13) You are instructed that deceased, by his contract of employment, assumed all risk of injury by reason of the negligent manner in which his co-employees might carry on the work of their common master.

"(14) You are instructed that the fact that the insulation of the wires was defective was not the proximate cause of deceased's death."

The court further charged, of its own motion, as follows:

"Now, gentlemen, it is for you to say, under the whole evidence in this case, whether these defendants, or either of them, were guilty of such an act of negligence as they should be compelled to respond in damages for this accident. I have

given you certain propositions of law which it is your duty to adhere to and follow in arriving at a verdict. The claim of the plaintiff is that, owing to a lack on the part of defendants, and especially owing to a lack on the part of defendant's general manager, *Rogers,* in failing to give the deceased, Williams, notice before the current of electricity was turned on, that the defendants were guilty of such an act of negligence as to make it actionable under the law, while the claims of defendants were that they used every ordinary caution and used all the foresight that could be expected of them under the particular facts and circumstances surrounding this case. It is for you, gentlemen, and you alone, to say what the truth is in that respect. I might say here that you cannot find a verdict in favor of the plaintiff unless you find that the defendants, or at least such one of them against which you may find a verdict, was guilty of negligence. Negligence is defined to be a lack of ordinary care, or such care as persons (or, in this case, corporations) of ordinary care or prudence ordinarily use under all the facts and circumstances surrounding them at the time."

The jury rendered a verdict for the plaintiff against both defendants, and assessed the damages at $5,125. Motions were made by both defendants for judgment *non obstante,* and also that the verdict be set aside and for a new trial; all of which motions were overruled and judgment entered for the plaintiff on the verdict, and the defendants separately appeal.

For the appellants there was a brief by *Bundy & Wilcox,* and oral argument by *C. T. Bundy.*

For the respondent there was a brief by *W. F. Bailey, H. B. Walmsley,* and *Sam. J. Williams,* and oral argument by *Mr. Walmsley.*

WINSLOW, J. The complaint in this action, as originally drawn, charged as one ground of actionable negligence that the defendants carelessly and negligently turned on the electric current without notice to the deceased, and knowing that the deceased was either working upon or likely to be working

upon the wires, whereby the deceased was killed. The complaint then went on to negative any negligence on the part of the deceased, and stated that the death was wholly caused by the "wilful, wanton, reckless, negligent act of the defendants," and by their turning on the electric current knowing that said deceased was working upon the wire. At the opening of the trial the plaintiff moved to amend the complaint by striking out the words *"wilful, wanton,* and *reckless,"* and the court permitted the amendment, stating that, if a sufficient affidavit of surprise were filed by defendants, the case would be continued at plaintiff's costs. The defendants excepted to the ruling, but made no claim of surprise. There was no error in the ruling. The clauses of the complaint which were intended to state the gist of the cause of action plainly charged simple negligence, not gross negligence or wilful wrong. The subsequent characterization of the act as "wilful, wanton, and reckless" as well as negligent was plainly contradictory and confusing as tending to introduce an inconsistent cause of action, namely, one based on gross negligence, and it was entirely proper to strike out those words.

The main questions in the case, however, are the question whether the evidence showed any liability on the part of the defendants and the question whether the charge of the court was erroneous. The test of ordinary care given in the charge is certainly inaccurate, and we can but regard the inaccuracy as prejudicial. Ordinary care has been frequently defined by this court as that degree of care usually or ordinarily exercised by persons of ordinary care and prudence (or the great majority of people) engaged in the same or similar business under the same or similar circumstances. *Rylander v. Laursen, ante,* p. 2, 102 N. W. 341, and cases cited. Comparing this long-established rule with the rule given in the charge, it is apparent that an important element has been omitted. The people whose ordinary conduct is to be the

test must be surrounded by the same or similar circumstances as surrounded the persons whose act is in question. This necessary element is wholly left out, and, instead thereof, it is said that ordinary care is such as is ordinarily used by persons whose conduct is the test "under the facts and circumstances surrounding *them* (i. e., the persons whose conduct is the test) at the time." Plainly, these last-named "facts and circumstances" might well be entirely different from the facts and circumstances surrounding the defendants in the instant case. This instruction, therefore, was erroneous, and necessitates a reversal of the judgment as to both defendants.

Proceeding to a critical examination of the general character of the charge, we confess that we have experienced great difficulty in ascertaining upon what theory this case was submitted to the jury. The alleged defective insulation of the wires was eliminated from the case, as will be seen by instruction No. 14. The court charged positively that the defendant lumber company could only be held liable if it failed either (1) to furnish a reasonably safe place to work, (2) to provide reasonably safe and proper tools, or (3) to provide reasonably competent and careful co-employees. In immediate connection with this proposition the court charged, in effect, that there was no evidence that the defendant company had failed to provide either safe and suitable tools or careful and competent co-employees, and that the company could not be found negligent on either account. Thus both the second and third grounds of possible liability on the part of the defendant company were excluded from consideration, leaving only the question of the failure to furnish a safe place to work. But, after the claim of defective insulation is negatived, the electric light pole, where the plaintiff's intestate was engaged at work, appears to have been as safe as such places are ordinarily made. There was no danger save the necessary danger arising from the fact that it carried two electric wires which might at any time be charged with a deadly current of

electricity.   The failure to warn Williams of the turning on
of the current was the act of negligence which was claimed
to be the proximate cause of the injury, both in the trial court
and by the respondent's brief in this court.   Hence, if the
court was correct in the enumeration of the sole grounds of
liability against the company, it seems certain that upon his
own theory he should have instructed the jury to return a ver-
dict for the company.   But passing from this apparent in-
consistency, we find that upon the subject of the failure to
give notice the court charged that both in repairing and test-
ing the dynamo *Rogers* and Fox were fellow-servants of Wil-
liams, and that Williams assumed the risk of any injury aris-
ing from their negligence in making such repairs *and tests;*
and, further, that the lumber company could not be found
liable simply because *Rogers* directed the current to be turned
on, or because he neglected to inform deceased that the cur-
rent was about to be turned on.   We have been unable to see
what question remained as to the alleged liability of the lum-
ber company after the instructions above cited had been given.
Not only had the three specific grounds which alone (upon
the court's own theory) would justify a recovery by the
plaintiff been negatived by the court, but the possible addi-
tional ground of failure to notify had also been denied by the
court.

   At this point the plaintiff seems to have been charged out
of court, so far as any claim against the lumber company is
concerned; but the court then proceeds to say, in substance,
that it is for the jury to say whether defendants, or either of
them, were guilty of such an act of negligence as should com-
pel them to respond in damages; that the plaintiff's claim is
that *Rogers's* failure to notify Williams was actionable negli-
gence, while defendants' claim is that they used ordinary cau-
tion and foresight under the circumstances; that it is for the
jury alone to say what the truth is in that respect; that a ver-
dict cannot be found against either defendant unless such de-

fendant was guilty of negligence, and that negligence is lack of ordinary care. The sum and substance of the charge is that, notwithstanding none of the facts necessary to charge the defendant company with negligence has been proven, and notwithstanding that the failure of *Rogers* to notify Williams does not render it liable, still, if the jury find the company guilty of negligence which was the proximate cause of the injury the jury may find a verdict against the company. What guide the jury had to determine what act or omission could be called negligence under this charge it is difficult to see. Apparently they were given liberty to pronounce anything negligence which they might choose.

However this may be, the consideration of the motions to direct a verdict for the defendants and for judgment *non obstante* calls for general discussion of the law applicable to the case and renders it unnecessary to pass upon the correctness of the various propositions of the charge in detail. When the evidence in the case closed, the only ground upon which liability could be reasonably claimed against either defendant was the ground that the turning on of the electric current without warning constituted actionable negligence. So far as the defendant lumber company was concerned, the solution of this question depended primarily upon the question whether *Rogers* was a vice-principal or a co-employee in the performance of that act.

There are certain duties which the master owes to his employees which he cannot delegate. These are the duty to furnish a reasonably safe place to work, considering the nature of the work in hand; the duty to furnish reasonably safe tools and appliances; the duty to provide reasonably competent and careful fellow-servants; and the duty to warn an employee of latent dangers in the work which the employee cannot, in the exercise of ordinary care, be expected to ascertain. *Portance v. Lehigh Valley Coal Co.* 101 Wis. 574, 77 N. W. 875; *Baumann v. C. Reiss Coal Co.* 118 Wis. 330, 95

N. W. 139; *Klochinski v. Shores L. Co.* 93 Wis. 417, 67 N. W. 934. When the master has provided a safe place, safe tools, competent and careful co-employees, and has given sufficient warning of hidden or latent dangers, he may doubtless commit to the employees the details of the work, including incidental repairs or readjustment of machinery made necessary by ordinary prosecution of the business, and which can easily be made by the employees themselves from proper materials furnished by the master; and such servants, thus prosecuting the work or making such readjustment or incidental repairs, become fellow-servants, whatever their rank, so that the negligence of one by which others are injured is the negligence of a fellow-servant. Cases illustrative of this principle are numerous. *Van den Heuvel v. National F. Co.* 84 Wis. 636, 54 N. W. 1016; *Dahlke v. Illinois S. Co.* 100 Wis. 431, 76 N. W. 362; *Okonski v. Pennsylvania & O. F. Co.* 114 Wis. 448, 90 N. W. 429; *Grams v. C. Reiss Coal Co.* 125 Wis. 1, 102 N. W. 586; *Wosbigian v. Washburn & M. Mfg. Co.* 167 Mass. 20, 44 N. E. 1058; *Cregan v. Marston,* 126 N. Y. 568.

The present case falls within this principle so far as the defendant company is concerned. The changing of the armature was a detail of the business which might properly be left to the employees themselves. In making this change and testing the operation of the dynamo after the change was made, *Rogers* was acting as a fellow-servant, and for any negligence committed by him therein the master was not liable; and a verdict should have been directed.

Whether *Rogers's* act was negligent so as to impose liability upon himself, and whether the deceased was guilty of contributory negligence, were questions for the jury under proper instructions.

*By the Court.*—Judgment reversed upon both appeals, and action remanded with directions to enter judgment for the defendant lumber company, and to award a new trial as to the defendant *Rogers.*