GEREG, Appellant, vs. MILWAUKEE GAS LIGHT COMPANY, Respondent.

*February 27—April 17, 1906.*

*Master and servant: Injury to servant: Failure to give warning of danger: Fellow-servants.*

1. The rule that the master's duty to provide a reasonably safe place for his servants to work in cannot be delegated to another has no application to a case where the place is not inherently dangerous but is liable to be rendered unsafe, as by the sudden approach of a street car over which the master has no control.

2. The foreman of laborers digging a trench in the street for a gas main is a fellow-servant with such laborers, so that the employer is not liable for an injury to one of the men caused by the foreman's neglect to inform him that street cars were liable to pass or failure to station a watchman to give warning of their approach.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

This is an action to recover damages for personal injuries sustained by the plaintiff while in the employ of the defendant as a common day laborer digging a trench in which there was to be laid one of the defendant's gas mains on Downer avenue at its intersection with the defendant's gas main on Lake avenue. It appears from the map in evidence and is undisputed that Downer avenue runs in a north and south direction, that Lake avenue runs in a northeasterly and southwesterly direction, and that Sheridan avenue runs from Lake avenue, and at right angles with it, in a northwesterly direction. The point where the gas main to be constructed on Downer avenue was to be connected with the gas main on Lake avenue was on the westerly side of Lake avenue, a little northerly of the northerly line of Sheridan avenue projected easterly, and on the west side of Downer avenue, but near the middle thereof.

At the time of the injury the plaintiff and six other men were engaged in digging the trench in which the gas main was to be laid in Downer avenue near such proposed point of intersection, and the trench had then been dug to the depth of fifteen inches; and at the time the same was being dug or tunneled under some of the street car tracks on Lake avenue, where they turned onto Downer avenue, the men so at work were faced toward the south, the plaintiff being further to the south than any of the others, and where he would be struck by a passing street car unless he got out of the way. While so at work a street car suddenly and without being observed by the plaintiff came down on Downer avenue from the north and struck the plaintiff on the left side or hip and severely injured him.

That occurred about 2 o'clock on Sunday morning, July 26, 1903. The men had worked there the Saturday before, and on that day were told by the foreman to return to the work the next morning as soon as the cars stopped running, which was supposed to be about 2 o'clock a. m. The men,

including the plaintiff, reached the place about 11 o'clock on that Saturday evening and lay down on the grass to rest before starting to work. The foreman arrived between 1 o'clock and 2 o'clock in the morning and after a little while ordered the men to start to work, and soon after the accident occurred. The work was being done under the supervision of the defendant's foreman, who had stepped away just prior to the injury, and was at the defendant's tool wagon, a block away, at the time of the accident, without stationing any one to keep a lookout during his absence. The early morning hour was selected for doing the work, so as to avoid the presence of the cars. Two cars passed on the track in question after the men were set at work—the one which struck the plaintiff; and another about fourteen minutes afterwards.

The foreman testified that the men requested him to set them at work because it was cold, and that when he directed them to begin work he told them, in the presence of the plaintiff, that there were a couple more cars to come down and it was all right to go to work; that they would watch the cars. On that Saturday afternoon the foreman was told by the defendant's superintendent to station one man to keep a lookout for coming cars; that there was nothing unusual about such instructions. The reason for giving such instructions, according to the testimony of the superintendent, was that when men were working close to the track with their heads in line with the street car it was dangerous, though not dangerous if a man was careful on his own account. There was evidence tending to prove that, prior to the accident, the plaintiff was not told that other cars or any car was liable to pass after they went to work that morning, and that he was not warned by the foreman or any one that a car was liable to pass after he so went to work.

At the close of all the testimony the court directed a verdict in favor of the defendant, and from the judgment entered thereon dismissing the complaint the plaintiff appeals.

For the appellant there was a brief by *Lenicheck, Fairchild & Boesel,* and oral argument by *F. T. Boesel.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *A. W. Fairchild.*

Cassoday, C. J.   There is no claim of any want of care on the part of the defendant or its superintendent in selecting the foreman who had charge of the men at the time of the accident, nor in failing to instruct or direct him to conduct the work in a way to save the men, as far as possible, from being struck by passing street cars.   There is no claim that the place where the men were at work was in itself inherently dangerous.   It is conceded that the work in which the plaintiff was engaged at the time of the accident was being done under the supervision of the foreman.   The only negligence claimed is that the foreman failed to inform the plaintiff that other cars were liable to pass at or about the time in question, or to provide a watchman to warn the plaintiff and other workmen of the approach of such car.   The trial court directed a verdict in favor of the defendant, on the ground that such alleged negligence of the foreman, if any, was the negligence of the plaintiff's fellow-servant, for which the defendant was not liable.

The important question is whether the plaintiff and the foreman were fellow-servants at the time in question.   As claimed by counsel for the plaintiff, the answer to the question does not depend upon the rank or grade of the negligent servant, but upon the nature or character of the act in the performance of which the injury was incurred.   *Dwyer v. Am. Exp. Co.* 82 Wis. 307, 52 N. W. 304; *Kliegel v. Weisel & V. Mfg. Co.* 84 Wis. 148, 53 N. W. 1119; *Stutz v. Armour,* 84 Wis. 623, 54 N. W. 1000; *Wiskie v. Montello G. Co.* 111 Wis. 443, 449, 87 N. W. 461, and cases there cited; *Okonski v. Pa. & O. F. Co.* 114 Wis. 448, 90 N. W. 429.   In several of these cases the negligent act complained of was the

act of the foreman conducting the work. Thus, in one of the cases cited it was held:

"A foreman who personally conducts the blasting in a quarry is a fellow-servant of those who assist him in such work, and one of the latter cannot recover for injuries caused by the unexpected explosion, beneath the rock upon which he was at work, of powder which the foreman had negligently permitted to remain there after the partial explosion of a blast." *Wiskie v. Montello G. Co., supra.*

In another of the cases cited it was held that "the facts that the foreman had authority to hire, discharge, and direct the dock force, and was charged with the duty to see that the docks were so operated as to be safe, and to provide necessary lights, signals, and warnings, did not render him other than a fellow-servant of plaintiff while performing the specific act mentioned." *Okonski v. Pa. & O. F. Co., supra.*

As indicated, the place where the plaintiff was at work, at the time of the injury, was not of itself inherently dangerous. It was only made dangerous by the approach of the street car, over which the defendant had no control. Of course, it has often been held by this and other courts that it is the duty of the master to provide and maintain for his servants a reasonably safe place for the doing of their work, and that such duty is personal to the master and cannot be delegated to another. *Bessex v. C. & N. W. R. Co.* 45 Wis. 477; *Hulehan v. G. B., W. & St. P. R. Co.* 58 Wis. 319, 17 N. W. 17; *S. C.* 68 Wis. 520, 32 N. W. 529; *McClarney v. C., M. & St. P. R. Co.* 80 Wis. 277, 280, 49 N. W. 963. But that principle has no application to a case where, as here, the place in itself was reasonably safe, but was liable to be rendered unsafe by the sudden approach of a car, which might have been foreseen and therefore avoided, had not the foreman failed to notify the plaintiff that other cars were liable to pass, or to provide a watchman to warn the plaintiff and other workmen of the approach of such car.

As indicated in some of the cases cited, the mere fact that the negligent person happened to be such foreman did not prevent him from being the fellow-servant of the men. Numerous additional illustrations might be cited. Thus it has been held that a foreman in a lumber yard and an employee therein are fellow-servants. *Hoth v. Peters,* 55 Wis. 405, 13 N. W. 219. So the foreman in raising and erecting a water tank and the workmen under him are fellow-servants. *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 338, 21 N. W. 269. So a watchman employed to guard a car-repairer is a fellow-servant of such repairer. *Luebke v. C., M. & St. P. R. Co.* 63 Wis. 91, 23 N. W. 136. So a brakeman on an approaching freight train was held to be a fellow-servant of workmen engaged in repairing the track, but who failed to give sufficient notice to those in charge of the train. *Cooper v. M. & P. du C. R. Co.* 23 Wis. 668. See *Toner v. C., M. & St. P. R. Co.* 69 Wis. 197, 198, 31 N. W. 104, 33 N. W. 433, and cases there cited. We must hold that the plaintiff in this action and the foreman in charge of the men were fellow-servants, and hence that the verdict was properly directed in favor of the defendant.

*By the Court.*—The judgment of the superior court of Milwaukee county is affirmed.