MASSY, Administratrix, Appellant, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Respondent.

*March 19—October 4, 1910.*

*Master and servant: Safe place to work: Electric wires: Fellow-servants: Vice-principal.*

A distinct and independent employee of an electric light and power company to whom is delegated the duty to disconnect and make safe the wires on which other employees must work is ordinarily a vice-principal, and not a fellow-servant with the linemen and other like workmen.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

On May 13, 1907, plaintiff's decedent, then twenty years
of age, had been employed for a month as lineman's helper
by the defendant, his work consisting in the handling of ap-
paratus and materials to facilitate the lineman; deceased
working on the ground and the lineman both on the ground
and on the poles.  Deceased had never handled live wires.
On that date decedent's lineman and some other employees
went to West Allis to readjust the wires and change brackets
in a certain region.  The wires included a "feed wire" ordi-
narily carrying electricity to the dangerous extent of 2,300
volts.  Deceased and his lineman went to a substation where
was an operator who controlled the switchboard connecting
and disconnecting wires.  They found there the assistant
superintendent of the lighting department and requested that
the feed wire might be killed during their operations; that is,
disconnected from the current.  They were informed that it
was already dead, and in their presence the assistant superin-
tendent directed the operator of the switchboard, Waldmann,
not to turn electric current into that feed wire until he re-
ceived direct word from the decedent's lineman.  It appeared
that a certain other employee, Dietz, having certain repairs
or adjustments to make in the substation, had previously, the
same day, requested Waldmann to disconnect this feed wire;
that Dietz finished his job at about half-past 1 of the same
day and notified Waldmann of that fact, remarking, "You
can call up Commerce street, and tell him to put the current
on the line again."  Waldmann did so and switched into con-
nection said feed wire, momentarily forgetting the instruction
to keep the wire dead for the protection of the line crew of
which deceased was one.  Deceased at that moment, two or
three blocks away, had hold of the wire with his bare hands
and was instantly killed.  At the close of the plaintiff's evi-
dence a judgment of nonsuit was entered, from which the
plaintiff appeals.

For the appellant there was a brief by *Houghton, Neelen*

& *Houghton* and *Samuel Wright,* and oral argument by *F. W. Houghton.*

*Clarke M. Rosecrantz,* for the respondent.

The following opinion was filed May 24, 1910:

DODGE, J.    This case presents a situation not unfamiliar but of rather recent development since the greatly enlarged use of electricity transmitted over wires for the creation of light and power at various and remote places.    There, as we know, men are constantly employed in stringing, connecting, repairing, and rearranging such wires, sometimes on one post and sometimes on another.    When the wires on or about which such men must work are highly charged with electricity they endanger the men.    The place of work becomes, in some degree, unsafe.    On whom rests the risk from such danger if it is unreasonable?    There are two well-established rules of the common law which in the early stages of industry were quite distinct and unlikely to conflict.    We have, first, the rule that the employer owes the duty to provide a reasonably safe place to work and reasonably safe appliances to work with, and is liable for the proximate consequences to the servant from omission so to do.    On the other hand, we have the rule that the employee assumes the ordinary risks of the business which he knows or, as an ordinary careful and intelligent man, ought to anticipate; among those risks is the likelihood of human infirmity in his fellow workmen, so that they may be careless.    Hence the concrete rule that a master is not liable to his servant for negligence of a fellow-servant in the common employment.

As the size of industrial enterprises increased, complications arose.    The master did not by his own hand build or equip the place for his employees nor even personally supervise the doing of such things, but hired men to do them: especially so in case of corporations, which can act only through some employee or delegate.    The question at once presented

itself, Are persons so employed to perform the master's duty toward other employees fellow-servants of the latter within the rule above stated? and, broadly stated, the answer of the courts has been negative; but the line of distinction has been most difficult of definement and has been crowded to one side or the other of individual situations by different courts and sometimes by the same court without very clear coherence of reason. The layers of the track over which the trainmen are to run have been held to be fellow-servants in the common enterprise of operating the railway, instead of representatives of the master in performing the latter's duty to provide a safe track for the trainmen to perform the particular work of running their train. *Cooper v. M. & P. du C. R. Co.* 23 Wis. 668. The same view is held as to a switchman who fails to keep turned a switch and thereby allows a train to run upon a car-repairer at work on the switch. *Smith v. C., M. & St. P. R. Co.* 91 Wis. 503, 65 N. W. 183. Other situations located upon the same side of the line are *Okonski v. Pa. & Ohio F. Co.* 114 Wis. 448, 90 N. W. 429; *Williams v. Northern Wis. L. Co.* 124 Wis. 328, 102 N. W. 589; *Miller v. Centralia P. & W. P. Co.* 134 Wis. 316, 113 N. W. 954. Some cases presenting the antithetic condition where the negligent employee was held not to be a fellow-servant engaged in common undertaking, but the representative of the master in performing, or failing to perform, the latter's duty to the plaintiff, are *Cadden v. Am. S. B. Co.* 88 Wis. 409, 60 N. W. 800; *Eingartner v. Ill. S. Co.* 94 Wis. 70, 80, 68 N. W. 664; *McMahon v. Ida M. Co.* 95 Wis. 308, 70 N. W. 478; *Jarnek v. Manitowoc C. & D. Co.* 97 Wis. 537, 73 N. W. 62; *Zentner v. Oshkosh G. L. Co.* 126 Wis. 196, 105 N. W. 911; *Smith v. Milwaukee E. R. & L. Co.* 127 Wis. 253, 106 N. W. 829; *Rankel v. Buckstaff-Edwards Co.* 138 Wis. 442, 120 N. W. 269; *Halwas v. Am. G. Co.* 141 Wis. 127, 137, 123 N. W. 789.

It is undeniable that some of these decisions and many others in other jurisdictions have extended the meaning of

the community of service essential to co-employeeship vastly beyond the original conception of a relation which gave opportunity for mutual acquaintance and watchfulness between fellow-servants greater than exists between master and servant. We now confront an industry relatively new, at least in present development, where constantly employees must work in places which are rendered safe or unsafe by other agents or employees hired to do the determining act for the very purpose of creating the safety: employees with whom the exposed workmen have no contact or community save that both are employed to carry on the general business of generating and distributing the master's merchandise, as are traveling salesmen and the janitor or elevator operator in his master's store. Reasons which may have led to classing as fellow-servants men employed in conduct of railroads may fail to control situations in this field, though apparently closely analogous. One distinction is in the sudden and unavoidable nature of the peril from a failure to take the proper and easy precautions, as in this case. A man at one moment is handling a cold and harmless wire which it is the duty of his master to keep so; the next he is in contact with a deadly peril, unforeseeable and unescapable by reason of the act of another whom his master has employed to perform the duty resting on the latter to make and keep safe the place of work. We think reasons to hold that the persons so employed are agents performing a nondelegable duty are very apparent. We think, too, that they are recognized and applied in such cases as *Zentner v. Oshkosh G. L. Co., supra,* and *Smith v. Milwaukee E. R. & L. Co., supra,* and that they should control this situation, although no very clear distinction may exist in principle from *Williams v. Northern Wis. L. Co., supra,* and *Miller v. Centralia P. & W. P. Co., supra.* It is at least apparent that this court has not yet established by clear precedent how far the recognized principles of co-employment extend in their application to the particular situations existing in this industry.

They have, we think, been carried in some industries to the full extent compatible with either reason, public policy, or humanity, but such precedents should not lead to further extension to new conditions, even though a pretty close analogy appear. We hold, therefore, that a distinct and independent employee to whom is delegated the duty to disconnect and make safe the wires on which others must work is ordinarily a vice-principal and not a fellow-servant with the linemen and other like workmen. Whether Waldmann was such in this case was at least susceptible of affirmative answer by the jury, as also whether the place or appliances furnished decedent were rendered not reasonably safe by failure of the master's duty intrusted to Waldmann. It was error, therefore, to enter judgment of nonsuit.

*By the Court.*—Judgment reversed, and cause remanded for new trial.

A motion for a rehearing was denied October 4, 1910.