DRISCOLL, Respondent, vs. ALLIS-CHALMERS COMPANY, Appellant.

*December 8, 1910—January 10, 1911.*

*Master and servant: Unsafe working place: Duty of master: Building operations: Negligence of fellow-servants: Assumption of risk: Proximate cause: Special verdict: Concurring causes: Evidence: Competency: Form of objection: "Accident:" Instructions to jury.*

1. The duty of the master to furnish a reasonably safe working place for his servants being absolute, if he delegates such duty to another the negligence of the latter in that regard will be imputed to the master.

2. Defendant was building additions to its plant, carrying on the work through its different departments which employed a large number of men. Plaintiff, of the steamfitters' department, was working at a pipe in a trench over which the carpenters' department had constructed a plank runway for the use of the men in the different departments in carrying materials. While passing over this runway, a helper in the equipment department dropped a heavy wooden block which struck and injured plaint-

iff. The evidence tended to show that the runway was not substantially built and that while it was being used the trench below was not a reasonably safe working place; that plaintiff had refused to work in the trench while the runway was in use; and that his foreman had promised that it should not be used while he was at work. *Held*, that defendant could not escape liability on the ground that the acts and conditions causing the injury were mere working details of the building operations and that the negligence of the helper who dropped the block and the failure of plaintiff's foreman to make the working place safe by preventing use of the runway were negligence of plaintiff's fellow-servants, for which the master was not liable. WINSLOW, C. J., and BARNES, J., dissent.

3. Evidence that it was customary for the foremen to arrange for protection of the employees; that plaintiff's foreman assumed the right and had at least apparent authority to prevent use of the runway while plaintiff was at work in the trench; and that plaintiff relied upon his promise and apparent authority and was reasonably warranted in so doing and did not know that the runway was in fact being used, was sufficient to support a finding by the jury that plaintiff did not assume the risk.

4. Findings in the special verdict that defendant's failure to provide plaintiff with a safe working place was the proximate cause of the injury, and also that negligence of the employee who dropped the block was such cause, constituted a sufficient finding of proximate cause, defendant being chargeable with the consequences of both negligent acts and the injury being the natural and probable result of their concurrence.

5. If plaintiff's working place was unsafe because of the runway and the employee carrying the block dropped it because of the unsafe condition of the runway, defendant is chargeable with the result, even though no negligence was shown on the part of such employee except in going over the runway with the block.

6. Evidence as to other instances of alleged danger in the work plaintiff had been ordered to do, to which he had objected and which had been remedied before the work was done, was admissible as tending to show the custom of the foremen to arrange with one another to guard against dangers and for the purpose of showing that plaintiff was justified in relying upon the promise of his foreman as to nonuse of the runway.

7. Where evidence is admissible for any purpose, a mere general objection thereto is properly overruled.

8. In an action for personal injuries alleged to have been caused by defendant's negligence, an instruction to the jury relative to the

question whether the injuries were the result of an accident, to the effect that an accident cannot happen if reasonable care to prevent it has been taken, is erroneous.

9. A further instruction that the burden of proof on the question of accident was upon the defendant, was erroneous because putting upon defendant the burden of proving that he was free from negligence.

10. Error in an instruction to the jury is not cured by the fact that the law upon the subject was correctly stated elsewhere in the charge.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

This action was brought to recover damages for personal injuries alleged to have been sustained in consequence of the negligence of the defendant. The answer, after certain admissions, denies generally the material allegations of the complaint. At the close of the plaintiff's evidence a motion for nonsuit was denied, and at the close of all the evidence defendant moved for a directed verdict, which was denied. The defendant requested the submission of certain questions to the jury, which was denied, and also excepted to certain of the questions submitted to the jury. The jury returned the following verdict:

"(1) Was the plaintiff on the 31st day of January, 1908, while at work in a trench in defendant's new power house at West Allis, injured by a block of wood falling on his back? A. Yes (by court, with consent of counsel).

"(2) Was the plank runway over the trench at the power house, and under which plaintiff was working when injured, constructed by employees of defendant in such manner as to be reasonably safe and sufficient for the purposes intended? A. No.

"(3) Was the said plank runway in a reasonably safe and sufficient condition for the purposes intended, at the time when plaintiff was injured? A. No.

"(4) If you answer question 3 in the affirmative you need not answer this question. Otherwise answer this question: Had such unsafe and insufficient condition of said runway

existed for such a period of time that the defendant in the exercise of ordinary care ought reasonably to have known thereof and had reasonable opportunity to have remedied the same at the time when plaintiff was injured? *A.* Yes.

"(5) Was the place in the trench where *Driscoll* was ordered to cut the pipe and put in a tee and valve a reasonably safe place for him to work, if, at the time plaintiff performed his work there, other workmen of defendant company were permitted to use such planks to move or carry materials from one side of the trench to the other over said planks? *A.* No.

"(6) If you answer question No. 5 in the affirmative then you need not answer this question. Otherwise answer this question: Was such unsafe and insufficient condition of such runway open and obvious to a person of ordinary care and prudence engaged in the work which plaintiff was performing at and prior to the time of his injuries? *A.* Yes.

"(7) Did plaintiff's foreman, Jacob Williams, on the day before plaintiff was injured, assure plaintiff that the runway would not be used by the workmen of defendant while plaintiff was working in the trench under the runway? *A.* Yes.

"(8) If you answer question 7 'Yes,' then did the plaintiff, relying on such assurance, enter the trench to cut the pipe and provide the same with a tee and valve, as he was ordered to do? *A.* Yes.

"(9) Ought the defendant or its representatives, in the exercise of ordinary care, reasonably to have known that the place in the trench where the plaintiff was ordered to cut the pipe and provide the same with a tee and valve was not a reasonably safe place to do such work, if at the time when plaintiff was doing such work other workmen were allowed to carry materials over such plank? *A.* Yes.

"(10) If you answer question 5 'No,' then answer this question: Was the defendant's failure to provide plaintiff with a reasonably safe place to do the work of cutting the pipe and putting in a tee and valve the proximate cause of plaintiff's injury? *A.* Yes.

"(11) Did Earl Rasmussen, an employee of the defendant, while passing over the runway in question, negligently drop the block which injured the plaintiff? *A.* Yes.

"(12) If you answer question No. 11 'Yes,' then answer this question: Was such negligence the proximate cause of plaintiff's injury? *A.* Yes.

"(13) Did any failure on the part of plaintiff to exercise ordinary care at the time and place in question contribute proximately to cause his injuries?  *A.* No.

"(14) Was the said runway used while plaintiff was on said job?  *A.* Yes.

"(15) If you answer question 14 in the negative then you need not answer this question.  Otherwise answer this question: Was such use of said runway known to the plaintiff at or prior to the accident in question?  *A.* No.

"(16) If you answer question No. 14 in the negative then you need not answer this question.  Otherwise answer this question: Was the use of said runway such that the plaintiff, in the exercise of ordinary care, ought reasonably to have known thereof?  *A.* No.

"(17) If you answer the seventh question 'No,' then answer this question: Did the plaintiff assume the risk of injury from the wooden block being dropped by a fellow workman so as to fall upon him, under the conditions of the work which existed at the time and place in question?  *A.* ——.

"(18) If you answer question No. 7 'Yes,' then answer this question: Did plaintiff assume all risks of injury, if any, arising from the failure by Jack Williams, his foreman, to see to it that the runway in question was not used while plaintiff was on the job of putting in a tee and valve in the pipe at the bottom of the trench?  *A.* No.

"(19) Was plaintiff injured at the time and place in question, as the result of an accident?  *A.* No.

"(20) If the court shall be of the opinion that the plaintiff is entitled to recover, at what sum do you assess the plaintiff's damages?  *A.* $20,000."

Defendant also moved for judgment notwithstanding the verdict, for changes in the special verdict, and that the verdict be set aside and a new trial granted, which motions were denied and judgment rendered in favor of the plaintiff on the verdict, from which this appeal was taken.

For the appellant there were briefs by *Harper & McMynn,* attorneys, and *Max W. Babb,* of counsel, and oral argument by *Mr. R. N. McMynn* and *Mr. Babb.*

*Harry M. Silber,* attorney, and *A. J. Schmitz,* of counsel, for the respondent.

The following opinion was filed January 10, 1911:

KERWIN, J.   The questions of fact litigated upon the trial are quite fully presented in the special verdict, which is set out in the statement of the case.   At the time of the injury plaintiff was a married man thirty years of age, and his family consisted of his wife and two children.   The defendant was engaged in building large additions and extensions to its plant, including a new power house and equipments.   The plaintiff was injured January 31, 1908, while at work in a trench in the new power-house basement by a heavy wooden block falling upon him.   Over 4,000 men were employed by the defendant at the time, and the work was carried on through different departments, among them being the carpenters' department and steamfitters' department, the plaintiff belonging to the latter.   A plank runway had been constructed over the trench in which plaintiff was working, which runway was used by men engaged in other departments of the work.   The trench extended across the basement of the building in process of construction from the south to the north and was from seven to eight feet wide and from five to six feet deep.   One L. F. Bower was vice-president of the defendant and C. E. Search general superintendent.   Edward Killingstad was foreman of the carpenters' crew and Jake Williams of the steamfitters' crew.   The runway was constructed across the trench where plaintiff was engaged when injured some two weeks before the injury, under the direction of the foreman of the carpenters' department, over which to carry material in the construction of the work.   The plaintiff did some work in the trench on January 30, 1908, upon a pipe which was near the bottom of the trench, probably less than a foot above the bottom, and on the 31st, in the forenoon, he was at work completing the job, working in a stooping position, when a block fell and injured him.   There was also an equipment department engaged in the work, which depart-

ment at the time of the injury was engaged in running up a new condenser a few feet from the runway in question.

The evidence tends to show that at the time of the injury one Rasmussen, a helper, was engaged in assisting the equipment department, and that he dropped the block upon plaintiff; that the runway was constructed of three planks, each ten inches wide and two inches thick and from fourteen to twenty feet long, resting upon a cement floor at one end and upon a pipe, which was some six inches above the floor, at the other end, which pipe was suspended from the ceiling or another pipe above by ropes; that these three planks were placed about half an inch apart, and were thrown across the trench, not nailed or fastened, and when walked upon would spring down a considerable distance.

There is also evidence tending to show that plaintiff refused to work in the trench while the runway was being used, and that prior to the injury Jake Williams, plaintiff's foreman, promised that the runway would not be used while plaintiff was at work in the trench, and that no one should bother him, and that plaintiff relied upon such promise; that plaintiff worked under the runway on January 30th from 2 to 4:30 p. m., and on the 31st, the day he was injured, from about 8 a. m. to some time between 9 and 10 a. m., and that he did not know of the use of the runway while he was in the trench before he was injured.

Plaintiff was injured while he was in a stooping position calking the pipe at the bottom of the trench, and the evidence shows that it was noisy, all engines, one being right above him, working; there were laborers from twenty-five to fifty feet east of him, also south of him thirty to forty feet; that the planks over the trench were loose, not fastened together nor supported in the middle, no cleats under them, and were springy; that the man who dropped the block on plaintiff was not working in plaintiff's crew, but was a helper of an erecting engineer.

1. The principal contention of the appellant is that under the established law of this state the negligence alleged and relied upon by the plaintiff here is the negligence of a fellow-servant of the plaintiff, therefore was among the risks assumed, because it is said that the undisputed facts show that all the causative acts and conditions related with or leading to plaintiff's injuries concerned and were a part of the building operations of the defendant and known to the plaintiff, and that the labor was that of the plaintiff and his fellow-servants, hence they were engaged in a common employment, and the negligence of one resulting in injury to another was merely the negligence of a fellow-servant, for which no recovery can be had. It is further argued that every act relating even remotely as a cause, condition, or occasion of plaintiff's injury was one of the mere working details of the common employment of the plaintiff and his fellow-servants; that the construction of the runway was for temporary use in removing dirt and concrete and in foot travel by plaintiff's fellow-servants; that the negligence of Rasmussen in respect to the fall of the wooden block was a working detail by a fellow-servant of plaintiff, and that the same is true regarding the alleged promise by the plaintiff's foreman as to the nonuse of the runway. And upon these propositions counsel for appellant rely on several Wisconsin cases, notably *Strehlau v. John Schroeder L. Co.* 142 Wis. 215, 125 N. W. 429; *Gereg v. Milwaukee G. L. Co.* 128 Wis. 35, 107 N. W. 289; *Williams v. North Wis. L. Co.* 124 Wis. 328, 102 N. W. 589; *Grams v. C. Reiss C. Co.* 125 Wis. 1, 102 N. W. 586; and the late case of *McKillop v. Superior S. Co.* 143 Wis. 454, 127 N. W. 1053. Of course the duty of the master to furnish a reasonably safe working place for employees in the discharge of their duties is well established; likewise that defendant cannot escape liability by delegating such duty. So the main questions are whether the defendant furnished a reasonably

safe working place, and whether it can escape liability for the injuries sustained on the ground that the negligence was that of a fellow-servant for which defendant was not liable, or whether the plaintiff assumed the risk.

.Whether the trench under the runway was a reasonably safe place for plaintiff to work while being used for the purposes for which it was constructed, we think was a jury question.    Obviously plaintiff did not regard it safe, therefore refused to work in it until assured by the foreman that it would be made safe while he was engaged in doing the work under it which he was ordered to do.    Moreover, the evidence, some of which we have heretofore referred to, was ample to warrant the jury in finding that the place was unsafe.

But it is insisted that if the place was unsafe such condi‑ tion was due to the negligence of a fellow-servant of plaintiff, therefore under the authorities before cited the plaintiff cannot recover.    But the authorities relied upon. by appellant do not control the instant case.    In *Strehlau v. John Schroeder L. Co.* 142 Wis. 215, 125 N. W. 429, a safe place was furnished and the injury resulted through the negligence of co-employees engaged at the time of the injury in a common employment with the plaintiff.    Plaintiff and other employees were engaged in moving timbers from the yard to places where they were to be framed into the building and in framing them as the building was in process of construction, hence were carrying out operative details of the work.    In *Gereg v. Milwaukee G. L. Co.* 128 Wis. 35, 107 N. W. 289, there was a common employment in the performance of the work out of which the injury arose, and although the negligence was that of the foreman it was held nevertheless the neg‑ ligence of a fellow-servant.    The court said (page 40) : "As indicated in some of the cases cited, the mere fact that the negligent person happened to be such foreman did not prevent him from being the fellow-servant of the men."    In

*Williams v. North Wis. L. Co.* 124 Wis. 328, 102 N. W. 589, a safe place was furnished, and the general rule was laid down that

"When the master has provided a safe place, safe tools, competent and careful co-employees, and has given sufficient warning of hidden or latent dangers, he may doubtless commit to the employees the details of the work, including incidental repairs or readjustment of machinery made necessary by ordinary prosecution of the business, and which can easily be made by the employees themselves from proper materials furnished by the master; and such servants, thus prosecuting the work or making such readjustment or incidental repairs, become fellow-servants, whatever their rank, so that the negligence of one by which others are injured is the negligence of a fellow-servant. . . . The present case falls within this principle so far as the defendant company is concerned. The changing of the armature was a detail of the business which might properly be left to the employees themselves."

To the same effect are *Grams v. C. Reiss C. Co.* 125 Wis. 1, 102 N. W. 586, and *McKillop v. Superior S. Co.* 143 Wis. 454, 127 N. W. 1053.

The case before us is not one falling within the rule of a mere working detail in a common employment, where the negligence of the superior servant is the negligence of a fellow-servant within the rule which forbids recovery in such cases. *Holloway v. H. W. Johns-Manville Co.* 135 Wis. 629, 116 N. W. 635; *Massy v. Milwaukee E. R. & L. Co.* 143 Wis. 220, 126 N. W. 544; *Halwas v. American G. Co.* 141 Wis. 127, 123 N. W. 789; *Rankel v. Buckstaff-Edwards Co.* 138 Wis. 442, 120 N. W. 269; *Zentner v. Oshkosh G. L. Co.* 126 Wis. 196, 105 N. W. 911; *Jarnek v. Manitowoc C. & D. Co.* 97 Wis. 537, 73 N. W. 62; *Cadden v. American S. B. Co.* 88 Wis. 409, 60 N. W. 800; *Parker v. Fairbanks-Morse Mfg. Co.* 130 Wis. 525, 110 N. W. 409. The duty of defendant to furnish a reasonably safe working place being absolute, if such duty be delegated by the master to another, negligence in that regard by such other will be imputed to the master.

*Jarnek v. Manitowoc C. & D. Co., supra.* The case before
us falls within this rule. *Cadden v. American S. B. Co.,*
*supra; Holloway v. H. W. Johns-Manville Co., supra; Ein-*
*gartner v. Ill. S. Co.* 94 Wis. 70, 68 N. W. 664, and numer-
ous other cases in this court. In *Holloway v. H. W. Johns-*
*Manville Co., supra,* the boiler was prepared by the night
crew, to which plaintiff did not belong, and he had no connec-
tion with the work of cooling the boiler, and was assured by
the immediate superior officer, who had promised to see that
the boiler was blown off at the proper time, that it was cool
enough and ready to go into, and relying upon this assurance
plaintiff entered the boiler and was injured because part of it
was still hot, and it was held that he was entitled to recover.
In *Eingartner v. Ill. S. Co., supra,* it was held that a car-
penter gang whose duty it was to replace planks about a ma-
chine after their removal for the purpose of attaching new
rolls are not fellow-servants of one employed to oil the ma-
chine, and their negligence in replacing the planks was the
negligence of the employer. The court said at page 79:

"When a master undertakes to furnish the servant a place
to work, with the preparation of which place the servant has
nothing to do, then it is the master's duty to furnish a reason-
ably safe place to work, and this duty cannot be delegated;
and the servant who prepares such safe place to work is not,
in the eye of the law, a fellow-servant with the other."

It was held in *Cadden v. American S. B. Co.* 88 Wis. 409,
60 N. W. 800, that the plaintiff, a riveter, was not a fellow-
servant with a gang of scaffold builders who prepared the
scaffolding for him to work upon, and that the negligence of
such scaffold builders was the negligence of the master.

In the instant case plaintiff had no connection with pre-
paring the runway. He belonged to a different department
of the work in the construction of the building, and when he
was put to work in the trench he was entitled to a reasonably
safe working place, and the master cannot escape liability by

showing that plaintiff's foreman was negligent in failing to make the place safe. The cases heretofore cited are ample on this proposition. This runway was not a mere detail of the work. It was very extensively used by men of the different departments during the construction of the basement of the building, and from the use to which it was put, as appears by the evidence, it would seem that it should have been quite a substantial structure.

2. Considerable argument is made upon the question of promise on the part of Williams to make the place safe by preventing use of it while plaintiff was at work in the trench, and it is contended by appellant that Williams had no authority to make such agreement; and further, that the evidence does not show a promise, and that if such promise were made with authority, as claimed by plaintiff, it would make the defendant an insurer. The question is argued on both sides upon the theory of the necessity of establishing that the promise by Williams bound the defendant. But the promise of Williams serves quite a different purpose. It being established that the place was unsafe, the only purpose of the promise was to relieve the plaintiff from the consequences of assumption of risk, which would defeat him had he continued to work without such promise, knowing the danger. The theory that a valid promise would make the defendant an insurer is without merit. The action is based upon the negligence of the defendant in failing to furnish a reasonably safe working place, and the charge of assumption of risk is met by proof of the promise. We think the evidence is sufficient to support the verdict upon this point. Williams was a superior servant over the plaintiff's crew. There is evidence that it was customary for foremen of the different departments to arrange prosecution of the work so as to protect the employees, and that Williams promised that the runway should not be used while plaintiff was at work in the trench. There is also evidence that Williams assumed the right to

make such arrangement and at least had apparent authority, and that plaintiff relied upon such promise and the authority of Williams, and had a right reasonably, under the facts of the case, so to do, and did not know that the runway was being used.    Upon such evidence the jury would be entitled to find that plaintiff did not assume the risk.    *Holloway v. H. W. Johns-Manville Co.* 135 Wis. 629, 116 N. W. 635; *Barney D. B. Co. v. Clark,* 112 Fed. 921; *Homestake M. Co. v. Fullerton,* 69 Fed. 923; *Dells L. Co. v. Erickson,* 80 Fed. 257.

3. It is further claimed by appellant that there is no sufficient finding of proximate cause, because the jury found two proximate causes, namely, unsafe place and negligence of Rasmussen, without finding specifically, as requested by defendant, whether the use of the runway was the proximate cause of plaintiff's injuries, and that the court should have submitted to the jury such question in order that it might be determined whether the use of the runway was the cause of the injurious result, and further that there is no evidence as to what caused the block to fall.    The jury found two concurring proximate causes, namely, the defendant's failure to furnish a reasonably safe working place, and the negligent dropping of the block.    We think the evidence is sufficient to support both of these findings, and it is apparent that the jury found that both acts of negligence contributed to produce the result.    The defendant is chargeable with the consequences of both negligent acts, and the injury was the natural and probable result of their concurrence.    So it is immaterial which of the two negligent acts was first in point of time. *Glettler v. Sheboygan L., P. & R. Co.* 130 Wis. 137, 109 N. W. 973; *McCoy v. Milwaukee St. R. Co.* 88 Wis. 56, 59 N. W. 453; *Grant v. Keystone L. Co.* 119 Wis. 229, 96 N. W. 535.    If the place were unsafe and Rasmussen dropped the block because of the unsafe condition of the runway, the defendant would be chargeable with the result even though no

negligence were shown on the part of Rasmussen except in going over the runway with the block.

4. Error is assigned upon the admission of evidence respecting other instances of alleged danger in the work which plaintiff was ordered to do and objected to by plaintiff and remedied after such objection and before the work was done by him. This evidence, we think, was admissible for the purpose of showing or tending to show the custom of the foreman of one department or crew to arrange with foremen of other departments or crews so as to guard against dangers in the prosecution of the work, and for the purpose of showing that plaintiff was justified in relying upon the promise of Williams in regard to the nonuse of the runway; and perhaps, as suggested by the court below, it may have been admissible upon other grounds not necessary to consider here. The objection to this evidence was general, and under well established rules if the evidence was admissible for any purpose the objection was properly overruled, and, as we understand the record, counsel for defendant considered the evidence admissible for some purpose. Jones, Ev. (2d ed.) § 894 (897); *Coggswell v. Davis,* 65 Wis. 191, 202, 203, 26 N. W. 557; *State ex rel. Swenson v. Norton,* 46 Wis. 332, 337, 1 N. W. 22. The issues with regard to the refusal of plaintiff to work until the danger was removed and the promise on the part of Williams that the working place should be made safe, as well as the facts respecting the custom existing between foremen of the different departments or crews to make such arrangements when necessary for the safety of the employees in the prosecution of their work, were issues in the case under the pleadings, and the evidence complained of was directed to these issues.

5. Error is also assigned on refusal to submit by the special verdict certain questions requested and in failure to submit all the issuable facts in the case, and also in permitting improper argument to the jury by plaintiff's counsel. We find

no prejudicial error in this regard. The issuable facts were fairly submitted to the jury in the special verdict.

Respecting the argument of plaintiff's counsel to the jury, appellant complains of discussions of the evidence in regard to other dangers which by arrangement between Williams and other foremen on the job were remedied, which has been heretofore referred to. This evidence being competent, discussion of it was not error.

6. Error is assigned upon the instructions respecting accident. The court charged: "That which is an accident in the law is something that occurs which could not have happened had such reasonable care and caution as the law requires been exercised to prevent its occurrence." The court also charged that the burden of proof on the question of accident was upon defendant. These instructions were erroneous, and, we think, prejudicial, and must work a reversal of the judgment. Whether an accident occurred does not depend on the exercise of reasonable care, nor is it prevented by the exercise of reasonable care. The charge given would lead the jury to understand that whether there was in fact an accident depended upon whether or not the defendant was in the exercise of ordinary care. By this instruction the jury were not told that an accident is something which could not have been prevented by the exercise of ordinary care, but in effect were told that an accident cannot happen if reasonable care is exercised. So, by the instruction, whether or not there was an accident was made to depend upon whether reasonable care had been exercised to prevent it. In other words, the court by the instruction complained of instructed the jury that an accident cannot happen if reasonable care to prevent it has been exercised, or that negligence is an essential element of accident. Thus it appears that the instruction made the question of accident turn upon negligence. But it is insisted by counsel for respondent that the instruction was not prejudicial because the court had elsewhere in

the charge given a correct definition of accident.    It is true that in the first part of the charge upon this subject the court correctly defined accident, but it afterwards so modified the first statement and in its last words erroneously defined it that we are of opinion that the error was not cured.    In *Yerkes v. N. P. R. Co.* 112 Wis. 184, 191, 88 N. W. 33, this court said:

"It is well settled in this state that an erroneous instruction on a given subject is not cured by the fact that the law is correctly stated elsewhere; for it cannot be known whether the jury have been guided by the correct rule or by the erroneous one."

Moreover, the charge on burden of proof on accident was erroneous.    The burden of proving negligence was upon the plaintiff.    In order to entitle him to recover he was obliged to prove negligence, and in proving negligence the elements of accident are necessarily disproved.    If in the proof of plaintiff's case it appeared that the injury resulted from an accident then no negligence was proved.    Therefore to put the burden of proof of accident upon the defendant would in effect put upon it the burden of proving that it was free from negligence, which is not the law.    Whether the injury was the result of an accident or resulted from the negligence of the defendant was a vital question in the case, and under the peculiar circumstances of the case it was of the utmost importance that the jury be properly instructed upon the question.    The court is therefore of the opinion that reversible error was committed in the charge regarding accident, and for that reason the judgment must be reversed.

7. Error is assigned on the ground that the damages awarded by the jury are excessive.    Upon this point the members of the court are not in accord, and since there must be a new trial we do not pass upon the question.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for a new trial.

The following opinion was filed January 23, 1911:

WINSLOW, C. J.   I agree that under existing rules of law this judgment must be reversed.   I cannot agree, however, with all that is said in the opinion of the court.

If I understand the opinion correctly, it holds by neces-sary implication that in building operations the master must furnish his employee a safe place to work.   It seems to me that this is contrary to the doctrine which has been established and followed in this state, at least since the case of *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 338, 21 N. W. 269.   See, also, *Porter v. Silver Creek & M. C. Co.* 84 Wis. 418, 54 N. W. 1019, and the line of cases cited in *Strehlau v. John Schroeder L. Co.* 142 Wis. 215, 125 N. W. 429.   The prin-ciple established in these cases is briefly that when a master furnishes suitable materials to his employees with which to erect a building upon a proper site he is not liable for injuries resulting to one of them from perils created by them in the progress of the work.   The cases where, either by custom or contract, it is the duty of the master to furnish a scaffold upon which the employee is to work manifestly have no appli-cation to the present case.   *Cadden v. Am. S. B. Co.* 88 Wis. 409, 60 N. W. 800; *Parker v. Fairbanks-Morse Mfg. Co.* 130 Wis. 525, 110 N. W. 409.

As I view this case the law of safe place to work does not apply at all.

Again, I am not sure that I understand the position taken by the court as to the effect of the alleged promise by the gang foreman to make the place safe.   Whether the opinion means that an objection of the employee and a promise to make safe by the gang foreman will serve to relieve the em-ployee from assumption of the risk regardless of the fact whether the gang foreman had authority from the master to make the promise or not, I am unable to determine.   If it does mean that, then it seems to me that it departs from well

established law.   In order to have any effect upon assumption of risk the promise must be made by the employer or by one who is actually authorized to bind the employer or who has apparent authority to bind the employer and is believed by the employee to have such authority upon facts which would induce a reasonable man so to believe.   26 Cyc. 1208–1212.   If this latter proposition is what the opinion means, then I do not disagree with it upon this point.

It gives me no pleasure to state these long established principles of the law of negligence.   I have no fondness for them. If I were to consult my feelings alone I would far prefer to let the case pass in silence.   No part of my labor on this bench has brought such heartweariness to me as that ever-increasing part devoted to the consideration of personal injury actions brought by employees against their employers.   The appeal to the emotions is so strong in these cases, the results to life and limb and human happiness so distressing, that the attempt to honestly administer cold, hard rules of law which either deny relief entirely or necessitate a new trial make drafts upon the heart and nerves which no man can appreciate who has not been obliged to meet the situation himself.

If it be said that some of these rules are archaic and unfitted to modern industrial conditions I do not disagree; in fact that has been my own opinion for long.   Upon reflection it seems that this could hardly be otherwise.   Principles which were first laid down in the days of the small shop, few employees, and simple machinery could hardly be expected to apply with justice to the industrial conditions which now surround us. In those earlier days the laborer ordinarily knew his fellow-workmen, worked with simple machinery, and ran comparatively small risk of injury.   The genius of our present remarkable industrial development requires that he carry on his patient toil in company with veritable armies of fellowmen, many of whom he can neither see nor know; it surrounds him with mighty and complicated machinery driven by forces

beyond his control, whose relentless strength rivals that of the thunderbolt itself; and it requires him to labor day by day with faculties at highest tension in places where death lurks in ambush at his elbow, awaiting only a moment's inadvertence before it strikes.

The faithful laborer is worthy of his hire in these latter days as never before; but is he not entitled to more, and are not those dependent upon his labors entitled to more? When he has yielded up life, or limb, or health in the service of that marvelous industrialism which is our boast, shall not the great public for whom he wrought be charged with the duty of securing from want the laborer himself, if he survive, as well as his helpless and dependent ones? Shall these latter alone pay the fearful price of the luxuries and comforts which modern machinery brings within the reach of all?

These are burning and difficult questions with which the courts cannot deal, because their duty is to administer the law as it is, not to change it; but they are well within the province of the legislative arm of the government. Happily the legislature has seen the need and now has these questions under serious consideration. If it shall solve them justly and equitably within constitutional lines, or even make a substantial advance in the direction of such a solution, it will be entitled to the gratitude of all citizens. Confidently I can say that none will welcome such a solution more heartily than the judges of the courts.

I am authorized to state that Mr. Justice BARNES concurs in this opinion.