WNEK, by guardian *ad litem,* Respondent, vs. SUPERIOR
SHIPBUILDING COMPANY, Appellant.

*February 20—March 12, 1912.*

*Master and servant: Injury: Unsafe place to work: Scaffolding: Duty
of master: Negligence of fellow-servants.*

1. The duty of a master to furnish for his servants a reasonably
safe place in which to work is an absolute duty which cannot be
delegated.

2. In an action for injuries sustained by a member of a riveting
crew in defendant's shipyard, caused by the collapse of a scaffold on which he was working, evidence showing, among other
things, that the scaffold was built by a separate crew working
independently of the plaintiff, that material used therein was
defective, and that the defect was discoverable by inspection
before such material was placed in the scaffold, is *held* to show
that defendant had not performed its duty to furnish a reasonably safe place to work and that the negligence was not that of
fellow-servants.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

This is an action to recover damages for personal injuries
received by the plaintiff while employed by the defendant as
helper to an operator of a dolley or riveting device.

On April 16, 1910, repairs were being made in defendant's dry dock of its shipyards at Superior to the deck of a
steel freight boat. In the performance of his duties the
plaintiff worked upon a structure in the hold of the boat composed of a scaffold covered with planks which formed a floor
four or five feet below the deck upon which the repairs were
being made. The scaffolding was composed of a steel beam
fastened to the side of the boat, a twelve-foot plank parallel
thereto at a distance of about eight feet, and three crossplanks nine feet long which spanned the area between the
twelve-foot plank and the steel beam. The floor on which
the plaintiff and the riveter worked was composed of three or

four planks laid loosely upon the scaffold. These planks were moved about by the riveter as necessity required during the progress of the work. Sometimes additional planks were placed under the dolley to raise it sufficiently to be within reach of the place where the riveting was being done.

The hatches of the boat which was being repaired ran across the deck and were twelve feet from center to center. Crossing the hold between the hatches were steel arches. Running along the sides of the boat four or five feet below the deck were steel beams about twelve inches wide. The twelve-foot plank was placed with the ends resting on two of the arches. The nine-foot planks were placed so that there was one at each end and one at the center of the plank resting on the arches. This composed the scaffold. This scaffold was built prior to the riveters starting work and by a separate crew of men. The planks required for the floor were also placed upon the scaffold by this crew. If the riveter required more floor planks, men were at hand to get them for him; if he needed only one more plank he usually got it himself. The ends of the hatches were about six feet from the sides of the boat so that the platform extended three feet under the open hatch.

The rivets were heated to a red heat upon the deck and handed with a pair of tongs to the plaintiff, who stood in the hatchway upon the floor on the scaffold. He either placed it in the proper hole or handed it to the "holder-on," who placed it. When the rivet was in place the holder-on applied the compressed air and pressed the dog of the dolley up against the rivet to hold it in place while it was being riveted from the other side of the deck. If the rivet was placed through the top of the deck the riveting was done by the dolley from below.

The plaintiff had been working for the defendant for eight or nine days when he was injured. Work at riveting on the boat in the dry dock had been first started that morning. At

about a quarter to 12 o'clock the plaintiff had received a rivet and had handed it to the holder-on. The holder-on had placed it in position and applied the compressed air in the dolley, the dog of the dolley had been jammed up against the rivet, and the riveting had been started from above the deck, when the scaffolding gave way and the holder-on and the plaintiff fell into the bottom of the hold, a distance of eighteen or twenty feet. The holder-on was killed and the plaintiff suffered the injuries for which he seeks to recover. One of the nine-foot planks of the scaffold had broken at a knot in the plank.

The jury returned a verdict finding that the defendant had furnished suitable material for constructing a safe scaffold for the men working thereon, that the material of which the scaffold was constructed was not fit and proper, and that the plaintiff exercised ordinary care for his own safety. The damages were assessed by the jury at $800; $400 being assessed to cover the future. This is an appeal from a judgment on the verdict.

For the appellant there was a brief by *Hanitch & Hartley,* and oral argument by *C. J. Hartley.*

For the respondent there was a brief by *Charles Line,* attorney, and *Frank E. Jenswold,* of counsel, and oral argument by *Mr. Line.*

SIEBECKER, J. The foregoing statement of facts shows that the plaintiff was a member of the riveting crew engaged in making repairs on the boat and that the defendant furnished a scaffold in the hold of the boat on which he was required to perform his duties. It appears that the scaffold was built by employees of the defendant who were not a part of the riveting crew to which plaintiff belonged, and that the only duty plaintiff had respecting his working place was the placing of such additional planks on the scaffold as might be needed for the floor and for erecting a suitable stand on the

scaffold for the riveting machine. From this it is manifest that the erection of the scaffold was part of the defendant's duty in preparing a place for plaintiff to work. See *Parker v. Fairbanks-Morse Mfg. Co.* 130 Wis. 525, 110 N. W. 409; *Cadden v. American S. B. Co.* 88 Wis. 409, 60 N. W. 800. Under these circumstances the measure of defendant's duty was as declared in *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48, namely, to furnish plaintiff a reasonably safe place in which to work. Such duty was an absolute one which could not be delegated by the master. We are satisfied from the evidence that the jury were justified in finding that the material used by the scaffold builders was not such as made the scaffold a reasonably safe one. The evidence shows that one of the planks was imperfect and that this defect was discoverable by inspection of it before it was placed in the scaffold. This evidence establishes that the master had not performed its duty of furnishing plaintiff a safe place to work and that the negligent construction of the scaffold was due to the carelessness of the scaffold builders, who worked independently of the plaintiff and were wholly separated from his duties.

It is suggested that the plaintiff's failure to place additional planks on the scaffold to support the riveting machine was a contributing cause to produce his injuries. It is manifest from the facts shown that the use of additional planks for this purpose would not in any way have made the scaffold more safe, and this, therefore, can have no bearing on defendant's liability for its want of care in furnishing plaintiff a safe scaffold to work upon.

*By the Court.*—Judgment affirmed.