AMERICAN MUTUAL LIABILITY INSURANCE COMPANY OF
Boston and another, Appellants, vs. CHAIN BELT COM-
PANY and another, Respondents.

*February 8—March 9, 1937.*

For the appellants there were briefs by *Charles H. Gorman* of Milwaukee and *Allan V. Classon* of Green Bay, attorneys for the American Mutual Liability Insurance Company, and *M. E. Davis* and *Lloyd B. Bongsto,* both of Green Bay, attorneys for John Kuske, and oral argument by *Mr. Davis, Mr. Classon,* and *Mr. Gorman.*

For the respondents there was a brief by *Wood, Warner & Tyrrell* of Milwaukee, and *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, attorneys for the Chain Belt Company, and *Chadek & Cornelisen* of Green Bay, attorneys for H. P. Jensen, and oral argument by *Walter T. Bie, Jackson M. Bruce* of Milwaukee, and *F. P. Cornelisen.*

NELSON, J.   Did the trial court err in granting the defendant's motion for judgment in its favor notwithstanding the verdict?   On March 2, 1934, H. P. Jensen, a contractor, was engaged in constructing a concrete sewer for the Metropolitan Sewerage District of Green Bay.   American Mutual

Liability Insurance Company of Boston carried his compensation risk. The plaintiff, Kuske, was employed by Jensen. While performing services on that day he was seriously injured. He thereafter applied for and was awarded compensation, in addition to medical and hospital expenses, amounting to more than $9,000. In this action recovery is sought from the defendant, as a third party who, the plaintiffs assert, was responsible for Kuske's injuries, and therefore liable to the plaintiffs under the provisions of sec. 102.29, Stats.

The sewer under construction was substantially horizontal and was about forty feet below the surface of the ground. From a shaft which had been sunk to the required depth, a tunnel was excavated. The tunnel was about six feet in diameter and six hundred feet long. Prior to the time that defendant's "pumpcrete" machine was leased to Jensen and put into operation on the job, the work in the tunnel was largely done by hand labor. Circular forms were set up in the far end of the tunnel, concrete shoveled upon and around them, and tamped into the space between the forms and the surface of the tunnel. The concrete was piped from the surface to the bottom of the shaft, where it was loaded onto small cars and pushed along the tunnel to the place where required.

For about two years prior to March, 1934, the defendant was the exclusive manufacturer of "pumpcrete" machines. Those machines were constructed so as to receive concrete from a mixer and to pump it through a pipe to the place where it was to be used. A "pumpcrete" machine, when successfully operated, saved considerable labor. On or about February 27, 1934, the defendant leased one of its machines to Jensen, under a written lease. The machine was sent to Green Bay accompanied by Andrew Dickson and Floyd Beach, two of the defendant's expert operators. The lease specified the sums that were to be paid by Jensen to the de-

fendant for the services and expenses of their expert engineering representatives, "who shall be in charge of operation and care of leased property, with necessary assistants provided by lessee, and who shall be in lessor's employ and under lessee's direction." On March 1st, the day before Kuske was injured, a "go-devil" was forced through the pipe with water ahead of it for the purpose of cleaning out the pipe. The "go-devil" was a dumbbell or spool-shaped contrivance constructed of steel and rubber which fitted tightly into the conveyor pipe. It was used in connection with compressed air to force sluggish or clogged concrete through the pipe. The "pumpcrete" machine was first put into operation on March 2, 1934. Difficulty arose during the afternoon as a result of the concrete's hardening and clogging in the pipe. When that happened, several sections of the conveyor pipe were taken down by Jensen's employees and the concrete shaken or pushed out by hand. The taking down of several sections of the pipe, however, did not relieve the situation and it was decided to send a "go-devil" through the conveyor pipe to force the concrete out. A "go-devil" was accordingly inserted in the pipe and air pressure applied. That "go-devil," however, stuck in the pipe. It was then decided to insert another "go-devil" because the first one probably was permitting the air to get by it. An air compressing machine was located on the surface near to the "pumpcrete" machine. A heavy piece of steel, referred to in the testimony as a "deflector," was attached to the end of the conveyor pipe, the purpose of which was to deflect the concrete downward and also to stop the "go-devil" when it reached the end of the pipe. After the second "go-devil" was inserted, and when a sufficient pressure had been attained, the "go-devils" were forced along the pipe, expelling the concrete ahead of them. When the "go-devils," or one of them, was expelled it struck the steel deflector with such

force as to shatter it and cause broken fragments thereof to be hurled along the tunnel a distance of thirty-five to forty feet to the place where Kuske and one Frederickson were standing at that time. A fragment of the deflector struck Kuske's right arm, severely injuring it and permanently disabling it. It was conceded by all parties that forcing a "go-devil" through the pipe was a dangerous operation to those who were in the tunnel in front of or ahead of the end of the pipe. No one connected with the defendant had ever known of a deflector's being shattered by a "go-devil." However, Mr. Viall, the defendant's vice-president in charge of its construction equipment division, and Mr. Dickson, one of its experts in charge of the "pumpcrete" machine on the job, conceded the possibility of such a thing's happening.

The question principally litigated at the trial was whether adequate and sufficient warning had been given to Kuske as to the danger involved in forcing a "go-devil" through the concrete conveyor pipe. As before stated, the jury found that no adequate and sufficient warning was given to the men working at the end of the pipe. The testimony is almost overwhelming to the effect that the men employed in the tunnel were emphatically warned to keep away from the end or ahead of the pipe while the "go-devil" was being forced through it. Dickson testified that he warned the men at the time it was attempted to force the first "go-devil" through the pipe. Russell, Jensen's superintendent, testified that he gave a warning. Jensen himself, who was also on the job and watching the operation, testified that he gave a warning to the men and that he himself warned Kuske. Other employees and supervisors who were in the tunnel testified that a warning was given. Kuske, however, testified that no warning whatsoever was given him, that he had no knowledge that a "go-devil" was about to be forced through the pipe or that it was dangerous for him to be where he was. The jury found Kuske guilty of negligence which con-

tributed to his injury to the extent of thirty per cent. Those findings are without support in the evidence unless the jury believed that Kuske's testimony with respect to the warning was untrue.

The defendant earnestly contends that there is no credible evidence that sustains the finding of the jury that no adequate or sufficient warning was given. We need not discuss that contention, since in our opinion no duty rested upon the defendant to warn the employees of Jensen, after it had fully and completely warned Jensen as to the dangers involved in the operation of forcing a "go-devil" through the pipe. That Jensen, the employer, was fully warned and understood the dangers involved, there can be no doubt. Jensen's superintendent, Russell, was also warned as to the dangers involved in the operation, although he was under the impression that the danger zone did not extend beyond twenty-five or thirty feet from the end of the pipe.

At the time the first "go-devil" stuck in the pipe, Dickson was in the tunnel overseeing the operation. Shortly thereafter he and Jensen went to the surface where Dickson conferred with his associate, Beach, as to the advisability of forcing a second "go-devil" through the pipe. After it was decided to force another "go-devil" through the pipe, Jensen returned to the tunnel, but Dickson remained at the surface. Before applying the air back of the second "go-devil" a signal was given to Russell, the superintendent, who was also in the tunnel. In about five or ten minutes the concrete began to move along the pipe and to be expelled therefrom. The "go-devils" shot out with terrific force.

The questions to be determined are: (1) What duty did the defendant owe to warn as to the dangers involved in the "go-devil" operation? (2) Did he owe a duty to warn Jensen's employees in addition to warning him?

The trial court was of the opinion that since the defendant fully and adequately warned Jensen as to the dangers, and

since he fully understood the dangers involved, no duty devolved upon it to warn his employees. It is undisputed that Jensen had been fully warned; that he knew of the dangers involved; that he knew that Dickson and Beach were engaged in an attempt to force the second "go-devil" through the pipe; that he was thoroughly familiar with the force of highly compressed air; and that he knew that it was highly dangerous for any of his employees to be in front or ahead of the end of the pipe when the "go-devil" operation was in progress.

It is well established that it is the duty of an employer to furnish a safe place of employment and that that duty is an absolute and nondelegable one. *Driscoll v. Allis-Chalmers Co.* 144 Wis. 451, 129 N. W. 401; *Wnek v. Superior Shipbuilding Co.* 148 Wis. 618, 134 N. W. 1053. It is also well established that the duty to furnish a safe place of employment includes the duty to warn employees of dangers known to the employer and not apparent or known to his employees. *Miller v. Paine Lumber Co.* 202 Wis. 77, 92, 227 N. W. 933, 230 N. W. 702. It was clearly Jensen's duty to warn his employees. *Rankel v. Buckstaff-Edwards Co.* 138 Wis. 442, 450, 120 N. W. 269. Was it also the duty of the defendant, under the circumstances that existed, to warn them? In our opinion, it was not. The "pumpcrete" machine was on the surface of the ground, forty feet above the level of the tunnel. The end of the concrete conveyor pipe was several hundred feet from the base of the shaft. While conducting the operation of forcing the "go-devil" through the pipe, Dickson and Beach, the company's experts, were obviously in no position to see the employees in the tunnel or to observe just where they were. Having warned Jensen, the employer, who was on the job, as to the dangers, and knowing that he had gone below, the company owed no duty to warn his employees. Had the company's experts been in a position to observe that employees of Jensen were in front

of the end of the pipe, and had they then failed to warn those who were so exposed to danger, a different situation would be presented.

No case involving a similar fact situation has been cited by counsel and we have found none. However, there are many cases in which the courts have dealt with somewhat analogous situations. In the Restatement of the Law of Torts, it is stated that "a lessor who leases a chattel for the use of others, knowing it to be or likely to be dangerous for the purpose for which it is to be used is subject to liability" if he

"(a) Knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

"(b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so." §§ 407 and 388.

While the Restatement does not relate to a situation precisely like the one here dealt with, we think its principles should be applied here.

In our opinion, this case is not ruled by such cases as *Graass v. Westerlin & Campbell Co.* 194 Wis. 470, 216 N. W. 161, and *Karsteadt v. Phillip Gross H. & S. Co.* 179 Wis. 110, 190 N. W. 844. In the *Graass Case*, the manufacturer and seller of a refrigeration plant, who installed the same, undertook to instruct Graass, an employee of the purchaser, how to operate it, but failed to warn or to give proper instructions as to the danger involved in operating a certain valve. In the *Karsteadt Case,* the seller of an electric washing machine failed to warn the plaintiff as to the dangers involved in operating it with the cogs of the wringer uncovered and unguarded. Neither of those cases presents a situation analogous to the situation here.

Without prolonging this opinion, we conclude that, under the circumstances of this case, the defendant fully discharged its duty when it warned Jensen as to the dangers involved in forcing a "go-devil" through the concrete conveyor pipe. In our opinion, it would be unreasonable to hold that the defendant was required, in addition to warning Jensen, to warn each and every member of his crew. To so hold would put an unreasonable burden upon the lessor of a machine, operated as this one was, under the direction of the lessee and employer.

*By the Court.*—Judgment affirmed.